## JOHN S. WALLACE et al. *v.* W. N. SEALES AND WIFE.

1. ATTACHMENT AGAINST STEAMBOATS; ACTS OF 1840 AND 1822.—The Statute of 1840, in relation to attachments against steamboats and other water craft, is in *pari materia* with the general attachment law of 1822, and the two acts will be construed together.

2. SAME: SAME: MAY BE EXECUTED BY A CONSTABLE.—Steamboats are essentially transitory in their nature; they have no abiding place, and are capable of being removed, at all times, out of the State, so as to defeat the collection of debts due by their owners; and they seem to come fully within the definition of an absconding debtor, given in the Act of 1854, viz.: a debtor who is "about to remove out of the State, or removing his effects, so that the claim of plaintiff cannot be made;" and for these reasons, the remedy by attachment was given against them; and hence, steamboats are within the reason of the law allow-

ing attachments against absconding debtors to be executed by constables; and such attachments may therefore be lawfully executed and returned by them.

3. PLEADING: PLEA AMOUNTING TO GENERAL ISSUE BAR.—After the general issue has been pleaded, a further plea, which in effect amounts to the same thing, is bad on demurrer.

4. BAILMENT: HIRER OF SLAVE: RESPONSIBILITY.—The hirer of a slave, who, in violation of his contract with the owner, removes him to a locality where he is subject and liable to contract a mortal disease, will be responsible for his value, in case the slave contracts such disease and dies.

ERROR to the Circuit Court of Carroll county.    Hon. William Cothran, judge.

The defendants in error attached the steamboat Afton for damages due them for the loss of their slave.    The declaration in substance alleged, that the plaintiffs hired to the owners of said steamboat their slave, for the purpose of being employed by them on the boat for one trip of the same, from Greenwood to Vicksburg, and then to be returned to them; but that the defendants, in violation of said agreement, had carried said slave beyond Vicksburg, on a trip to New Orleans, and "in going and performing said last-mentioned trip, the said defendants so improperly used said slave, that by reason of the several premises, the said slave sickened and died, and was wholly lost to the plaintiffs."

The defendants plead, 1st. The general issue.

2d.  A special denial of the contract alleged in the complaint.

3d.  "That they did not so improperly use said slave, hired from plaintiffs, by means whereof he sickened and died."

The plaintiffs demurred to this plea, and their demurrer was sustained.    A verdict and judgment was rendered for plaintiffs, for the value of the slave.

The proceedings in relation to the service of the attachment and motion to quash, are fully stated in the opinion of the court.

*Helm* and *Wright,* for plaintiffs in error.

To the cause first assigned, we respectfully ask the particular attention of the court.

This was a case of attachment against a steamboat, for the value of a slave, estimated at $1500.

The writ was executed by a constable, who seized upon the boat. In our opinion, a constable has no authority to execute writs of this character; the statute we think clearly limits this authority to the sheriff, or if there be no sheriff, then to the coroner. We think this view will be manifest, when the statutes on this point shall have been examined and compared. The Act of 1822, Hutch. Code, 801, § 6, relating to absconding debtors, holds this language, that after the necessary prerequisites, " the officer to whom the demand is made, shall grant an attachment, &c., which attachment shall be directed to the sheriff, or other proper officer, of any county," &c.

Now, it will not be contended that this clause, " any other proper," embraces constables, for if it does, and if the legislature so designed, why did they, in the 30th clause of the same act, Hutch. Code, 808, specially provide that constables might execute process of attachment against absconding debtors.

It appears to us very clear, that prior to this provision, a constable could execute no attachment process when the sum demanded amounted to more than fifty dollars; and it will be seen, that this enlargement of their powers just referred to, is limited to special cases, viz.: to those of absconding debtors; and the reason of this enlargement of their powers, in such cases, is apparent. Now, it will not be contended, we think, that steamboats, because they are migratory in their movements (and necessarily so), are to be placed on the footing of absconding debtors. Those who contract with them, do so with the knowledge of their migratory character; and if they wish to bring them under the control, and within the provisions, of the act in relation to absconding debtors, they should follow strictly its provisions, and their affidavit should contain the necessary averments. The attachment in relation to steamboats is special in its character; and the direction as to the manner in which the writ is to be executed is identical with that of 1822, in relation to absconding debtors. See Hutchinson's Code, 288, Art. 6. Several reasons might be given why a constable should not be clothed with such ample authority. 1st. Because the office being one of minor importance and dignity, the bond required of them is comparatively small, and does not guarantee that confidence and security which the citizen has a right to demand and expect,

when his pecuniary interest, to a large degree, is intrusted to their hands. And 2dly. Being such an office as above mentioned, it holds out few or no inducements to its acceptance by men qualified, by their characters for integrity and business habits, to discharge the duties which such unlimited authority and power must devolve on them. The statute giving constables the power to execute writs of attachment, is an enacting statute, and their power is confined to the specific cases. See *Lawrence* v. *Featherston*, 10 S. & M. 345.

In regard to the second ground of error assigned, viz. : because the court sustained the demurrer to defendants' third plea, we will only say that, in our judgment, we think the plea was responsive to the complaint; and being so, should not have been overruled. The plea only denies what was affirmatively charged in the complaint.

*J. Z. George*, for defendant in error.

1. The Act of 1822, Hutch. Dig. 808, § 30, provides that constables may execute writs of attachment against absconding debtors; and by next section, Ib., it is expressly provided, that the law of attachment shall be construed in the most liberal manner for the advancement of justice, the detection of fraud, and the benefit of creditors.

By the 8th section of the act, Hutch. Dig. 802, it is declared, that the bond and affidavit of the creditor shall be returned by the officer taking the same to the court to which the attachment is returnable, and in case of a failure therein, the attachment is declared to be illegal and void; but yet this court has, upon two occasions, decided in accordance with the principles of construction prescribed in the act, that, when no injury has occurred to the debtor by such failure to return the affidavit and bond, it shall not vitiate the attachment. *Wheeler* v. *Stevens*, 13 S. & M. 623; *Bank of Augusta* v. *Curry*, 6 Cushm. 670.

By an application of these principles of construction to the interpretation of § 30, above quoted, I think I am justified in saying that the levy in this case was made "by a proper officer."

The policy of this section is to provide a safe and certain remedy to the creditor, to prevent the removal out of the State of property to which the creditor must look for satisfaction of his demand. For

if the creditor were always required to secure the services of the sheriff, it is manifest that in many cases the absconding debtor would escape, and the remedy by attachment would be defeated. The case of a non-resident debtor, who has property situated in this State, is quite different, for then, no necessity exists for haste to secure the debt, hence the court in *Lawrence* v. *Featherston,* 10 S. & M. 345 (a case relied on by defendants), held that an attachment against a non-resident was not embraced in the section under consideration.

But when we look at the geographical position of the State, the great number and length of the navigable streams within its limits, and on its borders, all of which have their navigable termini outside of this State, and beyond her jurisdiction, it is evident that the remedy intended to be secured by attachment against steamboats, &c., is essentially different from that against non-residents. And again, steamboats are essentially migratory, they are birds of passage, ever on the wing, and by the known course of trade making but short stay within the limits of the State, and almost instantly and continually returning to the great marts, Mobile and New Orleans.

A construction which would embrace them within the class of absconding debtors, would not, under any circumstances, be strained or unnatural; but, under the principles above stated, as declared by the statute, such construction is essential (so far as the execution of attachments are concerned) "for the advancement of justice and the benefit of creditors."

I therefore conclude that the constable "is a proper officer" to execute the writ.

2. The second error assigned, relates to the plaintiff's demurrer to the defendant's third plea.

This plea amounted to a special general issue, denying a portion only of the facts upon which the plaintiff relied in his declaration. If good at all, it amounted only to the general issue, which had already been filed. The plea was, therefore, bad. But, if it were good, then, inasmuch as the defence therein set up, could have been made under the general issue, he cannot complain.

This has been expressly decided in *Conner* v. *Swain,* 32 Miss. R. 245.

HANDY, J., delivered the opinion of the court.

This was an attachment against the steamboat Afton, to recover

the value of a slave, hired by the defendants in error to the proprietors of the boat, to go on a special trip from Greenwood, in Carroll county, on the Yazoo river, to Vicksburg, and to return to Greenwood, alleging that, in violation of the agreement, the slave was taken by the boat to New Orleans, in consequence of which he contracted a disease of which he died.

The attachment was issued under the Statute of 1840, Hutch. Code, 288, and was directed " to the sheriff or any proper officer of Carroll county," where it was issued, and where the boat was at the time. It was delivered to, and executed by, a constable of that county, who levied it upon the boat, which was replevied by the plaintiff in error, under the fourth section of the act above referred to.

Upon the return of the process and proceedings to the Circuit Court, the plaintiff in error moved the court to quash the return upon the attachment, because it was made by a constable. The motion was overruled, the defendant excepting, and this is the first and principal error assigned by the plaintiffs.

The Statute of 1840, in relation to attachments against steamboats for debt, provides that they may be directed to " the sheriff or other proper officer" of the county, to be executed, and the question is, whether a constable is a proper officer within the contemplation of the statute.

The statute giving this remedy is in *pari materia* with the general statute of 1822, regulating the process of attachment; and in so far as it is silent, as to the modes of proceeding in the execution and return of attachments issued under it, they must be regulated by the general rules prescribed in that statute. By the 30th section of the Statute of 1822, Hutch. Code, 808, an attachment *against absconding debtors*, may be executed and returned by a constable. The Statute of 1854, chapter 10, section 4, defines an absconding debtor to be " one who shall abscond or secrete himself, or shall remove out of this State, or shall be about to remove or conceal his property out of this State, or is concealing or removing, or about removing his effects, so that the claim of the plaintiff will be defeated or cannot be made."

It is clear that from the nature of steamboats and of the business in which they are engaged, that they are of a transitory character and have no abiding place. It was for this very reason that the

process of attachment was extended to them, treating them as capable at all times, and from their nature, to remove and defeat the plaintiff's debt; and they appear to come fully within the definition contained in the Act of 1854, of a debtor " about to remove out of this State, or removing his effects, so that the claim of the plaintiff cannot be made."

The provisions of the Act of 1822 have always, according to the rule declared in it, been " construed in the most liberal manner for the advancement of justice, and the benefit of creditors;" and as the reason for the service of an attachment against an absconding debtor, by a constable, is within the reason of the law in relation to steamboats, we think that it is fairly applicable to cases of steamboats, and that the court below acted properly in overruling the motion.

Another error relied upon is, that the court sustained a demurrer to the third plea. That plea alleged that the defendants did not so improperly use the slave, by means whereof he sickened and died. The defendants had already pleaded the general issue to the declaration, and this plea but amounted to the same thing, unless it was intended to narrow the issue to the mere question of the *improper use of the slave,* by means whereof he died. If that was its object, it was not responsive to the declaration, the *gravamen* of the complaint being that he was taken to New Orleans contrary to the special agreement, in consequence of which, and of the defendants' improper use of the slave, he died. If, under these circumstances, the slave had taken the yellow fever or small-pox in New Orleans, of which he died, the defendants would have been liable, though he was not improperly used. Yet, under this plea, the issue would have depended upon whether the slave was improperly used. In either view the demurrer was properly sustained.

Judgment affirmed.