### NORTHERN PAC. COAL CO. v. RICHMOND.[1]

(Circuit Court of Appeals, Ninth Circuit. November 14, 1893.)

#### No. 104.

1. MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE OF MASTER.

In an action against a mining corporation, it appeared that plaintiff, a boy of 14, was directed by defendant's superintendent to assist in a service outside his regular duties, of an extremely dangerous character for one of his age, and, while so assisting, stumbled over a piece of coal lying on a track, which he had previously seen there lying, and sustained the injuries complained of. *Held,* that the evidence was sufficient to justify the jury in finding defendant guilty of negligence.

2. SAME—CONTRIBUTORY NEGLIGENCE OF SERVANT.

Notwithstanding plaintiff's knowledge that the coal over which he stumbled lay upon the track, the jury might properly consider and decide whether plaintiff had reached such maturity as to understand the danger to which he was exposed by its presence. Railway Co. v. Mealer, 1

---

[1] Rehearing pending.

C. C. A. 633, 50 Fed. 725, 6 U. S. App. 86, distinguished. Railroad Co. v. Fort, 17 Wall. 553, followed.

**3. SAME—NEGLIGENCE OF VICE PRINCIPAL—FELLOW SERVANTS.**
The jury were justified in finding that plaintiff's acts were in consequence of the superintendent's instructions, notwithstanding that at the time of the injury plaintiff was under the immediate supervision of a fellow servant; the superintendent, in that connection, being a representative of the employer, and not a fellow servant of plaintiff.

In Error to the Circuit Court of the United States for the District of Washington.

At Law. Action by Thomas J. Richmond, by William Richmond, his guardian, against the Northern Pacific Coal Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

McBride & Allen, for plaintiff in error.
Forster & Wakefield, for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. Thomas J. Richmond, by his guardian, as plaintiff, brought an action against the Northern Pacific Coal Company, defendant, to recover for injuries suffered by plaintiff while in the service of the defendant, engaged in the mining of coal at Roslyn, in the state of Washington. The plaintiff alleges that through the negligence of the defendant, its agents and servants, he was thrown upon the track of the defendant's tramroad, used for hauling coal out of its mine, and a loaded car passed over his arm, and crushed it, so that amputation was required, whereby his arm was lost. The defendant denied these allegations, and alleged that the injury was caused by the plaintiff's carelessness or negligence. A judgment was rendered for the plaintiff for the sum of $8,000.

The facts are substantially as follows: The plaintiff was 14 years and 2 months old. He and his father and a brother were all in the employment of the defendant in its coal mine. The plaintiff was employed as a "trapper." There were two stations, with doors, in the tunnel which led into the workings of the interior of the mine. At these stations boys were employed to open and close the doors for the passage of the coal cars as they were drawn in and out of the mine by mules. These boys were called "trappers." The train usually consisted of three or four cars, and there were three or four trains running in the mine at the time of the accident. There was a driver to each train, who had charge of the mules and the running of the train. The plaintiff had been in the employment of the mine for several months, and was paid a fixed rate of wages. It was not uncommon for the "trappers," when a loaded train went out of the mine, to ride out on the cars, and return with the train; there being no duty to perform at the trap in the mean time. In a few instances the plaintiff had taken the place of the driver of the train, and had received driver's pay therefor. It appears that the plaintiff was a boy of or-

dinary intelligence, and understood the working of the trains. The driver in charge of the train which caused the injury had been employed in that capacity for some weeks. The plaintiff testified that on the morning of the day when the accident occurred, the boss told the "trappers" that he wanted them to help the drivers that day, as he wanted to get out a big run of coal; that he said to them: "Rush the drivers, and help all you can." He had so instructed them upon some previous occasions. There was along the track in the tunnel a place called the "swamp," not because it contained water, but because it was a low place. It was the custom, when the loaded train reached the point of descending the "swamp," to urge the teams down as fast as possible, in order that the momentum acquired might help the cars on the up grade after passing the "swamp." At the time of the accident, the driver and the two "trappers" were all riding on the rear end of the last car when the train began to descend into the "swamp." The plaintiff, of his own accord, jumped off the car, and ran forward, and alongside, to throw off the brake. The driver called to him, "Get there, Tommy." It was the purpose of the plaintiff to get to the brake on the second car, and, as soon as he should reach the "swamp," to throw it off. This was ordinarily done by the driver. To reach the brake it was necessary for the plaintiff to run forward by the gangway at the left of the train, mount the platform or bumpers between the cars, and cross thereby to the right of the train, where the brake was. A large lump of coal had fallen from a previous train in passing out, and, as the plaintiff was running alongside, and had about reached the point where he would pass between the cars, he stumbled on the piece of coal, and fell, his right arm falling between the cars, where it was run over and crushed. The plaintiff testified that he knew that this lump of coal was lying there, and that he had noticed it on a previous trip that day, about 10 minutes before.

There are several errors assigned, but the argument of counsel for plaintiff in error is confined principally to the consideration of the whole testimony offered on behalf of plaintiff, and to the discussion of the question whether or not the refusal of the court to direct the jury to find a verdict for the defendant was error.

This assignment of error raises the question whether or not there was any evidence to go to the jury. It is claimed on behalf of the plaintiff in error that there was no evidence whatever of negligence upon the part of the corporation; that in assisting the driver on that day the plaintiff was acting in the scope of his regular employment; that he confessedly knew the risks of his employment; that he was a fellow servant with the driver of the train; that, if the accident occurred either through his own or through the driver's negligence, the defendant is not liable.

Briefly summing up the evidence presented in the bill of exceptions, it appears that, while the testimony was conflicting concerning the material issues in the case, there was evidence which went to the jury that the superintendent in charge of the mine, and of the operatives at work therein, directed the plaintiff on the day of

the accident to rush the drivers, and to help them all he could; that the plaintiff, in consequence of such instructions, went with the driver upon the trip upon which the accident occurred, and was in the act of assisting the driver when he was injured; that his parents had no knowledge that he at any time rendered such service, or any service other than that of "trapper;" that the plaintiff was 14 years of age, and small for his age; that the employment of aiding the driver in setting and removing the brakes was an "extremely dangerous" one for a boy of his age; that it was a service outside the duties of his regular employment. In view of this evidence, we cannot say that the jury should have been instructed to return a verdict for the defendant. From these facts the law does not deduce the conclusion that there was no negligence on the part of the defendant, or that there was contributory negligence by the plaintiff.

In Railroad Co. v. Powers, 149 U. S. 43, 13 Sup. Ct. 748, the court said:

"It is well settled that where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this, whether the uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them."

It is argued on behalf of the plaintiff in error that since the plaintiff in the action had knowledge that the piece of coal lay upon the track, and since his injury was caused solely by his stumbling over the same, this injury was the result of his own negligence, and he cannot recover. The decision of the United States circuit court of appeals in the case of Railway Co. v. Mealer, 6 U. S. App. 86, 1 C. C. A. 633, 50 Fed. 725, is cited in support of that view. In that case the plaintiff was a switchman 22 years of age, engaged in the discharge of his regular duties. In coupling some cars in the yard of the railroad company, he stumbled over a piece of coke that had fallen from one of the cars he was coupling, and his arm was thrown between the cars, and injured. The court held that the jury should have been instructed to return a verdict for the defendant, upon the ground that the plaintiff was well aware of the risks of his occupation, and knew that coke and coal were liable to fall beside the track at any time, and that, if there were any neglect in not removing the piece of coke that caused him to stumble, it was the negligence of his fellow servants. That case lacks two of the essential features presented in the case before the court;—the immature age of the plaintiff, and the fact that the superintendent of the mine had taken him from his regular employment, and had placed him in a service which he himself admitted was "extremely dangerous" for a boy of 14. The plaintiff, it is true, had seen the piece of coal over which he stumbled lying upon the gangway, but it does not follow, as a conclusion of law, that his judgment had reached such maturity that he was apprised of the danger of running alongside the track, or of setting or removing the brakes, under such circumstances. A piece of coal was liable to fall from the cars upon any trip, and the danger of falling over such an ob-

struction may have been one of the perils which, in the mind of the superintendent, made that employment extremely dangerous to a boy of 14. The superintendent of the mine represented and stood in the place of the defendant in the action, and was not a fellow servant with the plaintiff, and the jury may have believed from the evidence that all the acts of the plaintiff were done in consequence of the superintendent's instructions, notwithstanding the fact that the plaintiff was at the time of the injury under the immediate supervision of the driver, who was his fellow servant. The plaintiff, in entering the employment of the defendant, took upon himself the risks incident to the service which he engaged to perform, but he did not assume the risk of service other than those he contracted to render, and which neither he nor his father would have reason to believe he would be required to encounter.

We think the principles involved in this case are fully covered by the decision of the supreme court in Railroad Co. v. Fort, 17 Wall. 553. In that case a boy of 16 was engaged as helper in a machine shop. His duties were to receive and carry away moldings as they came from the molding machine. He was directed to ascend a ladder to a considerable height, among dangerous machinery, and adjust a belt which was out of place. In so doing, he lost his arm. The court held it to be immaterial whether the boy was acquainted with the danger of the undertaking, and that, in view of the tender years of the boy, the fact that the injury did not occur in the discharge of the duties his father had engaged he should do, and the peril of the unusual service he was required to render, all of which facts were found in a special verdict, the railroad company was liable for the injury.

The judgment is affirmed, with costs to the defendant in error.