## FRANK UNNEWEHR CO. v. STANDARD LIFE & ACCIDENT INS. CO.

(Circuit Court of Appeals, Sixth Circuit. January 5, 1910.)

No. 1,964.

1. MASTER AND SERVANT (§ 95*)—DANGEROUS EMPLOYMENT—MINORS.

Whether the employment of a child 16 years of age as off-bearer from a veneer saw in a mill was an employment whereby his life or limb was endangered within Rev. St. Ohio, § 6986-1, prohibiting such employment, did not depend on whether the services required of the child could not be performed without danger to life or limb, but on whether the employment, considering the inevitable wear and tear of the strain of the position and the indifference to danger that would naturally follow from childish curiosity and inexperience, rendered the position dangerous.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 141, 160; Dec. Dig. § 95.*]

2. INSURANCE (§ 437*)—INDEMNITY POLICY—EMPLOYMENT OF CHILDREN—ILLEGAL ACTS.

Plaintiff employed a child under 16 years of age as off-bearer from a circular veneer saw in a mill. The saw was 68 inches in diameter, weighing about 1,000 pounds, and extended about 45 inches above the floor. When once started, the method adopted for stopping it after releasing the power was to jam a piece of scantling between the edge of the floor and the saw disk. It was no part of the child's duty to start or stop the saw,

---

his duty being to stand some distance away from it and carry off the boards of veneer as they were sawed off. On several occasions, however, he voluntarily attempted to stop the saw, and was directed by adult coemployés not to do so, that he would get hurt, and on the occasion of his injury he attempted to stop the saw in this way, and one of his arms was caught in the teeth and injured. *Held,* that the child was employed in a position whereby his life or limb was endangered in violation of Rev. St. Ohio, § 6986-1, and hence a master, after being cast in an action for damages sustained by the child, could not recover over against an indemnity insurance company on a policy exempting the company from liability for injuries suffered by any person employed in violation of law as to age.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 437.*]

In Error to the Circuit Court of the United States for the Southern District of Ohio.

Action by the Frank Unnewehr Company against the Standard Life & Accident Insurance Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Alfred Mack, for plaintiff in error.
C. D. Robertson, for defendant in error.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

WARRINGTON, Circuit Judge. The question in this case stated broadly is whether, in view of an Ohio statute (Rev. St. Ohio, § 6986-1) forbidding placing a child under the age of 16 years "at employment whereby its life or limb is endangered," an employer can knowingly put a child under that age at work within close proximity to a large circular saw, and then recover from an indemnity insurance company the amount of a judgment paid by the employer to the child for injuries suffered from the saw while not engaged in line of duty, notwithstanding a condition of the insurance policy which exempts the company from liability to the insured arising out of injuries "suffered by any person employed in violation of law as to age."

The case was brought in the court below by plaintiff, Unnewehr Company, against defendant, an insurance company, upon a policy of insurance. Plaintiff was engaged in the business of manufacturing veneer and thin lumber at its plant in Cincinnati. By the policy plaintiff was indemnified against loss imposed by law for damages on account of bodily injuries suffered through operation of its factory by any of its employés while within its factory during a fixed period. Jurisdiction was obtained through diversity of citizenship. A judgment and costs for $2,587.96 had been recovered against plaintiff in another suit by one Luther Watson, who, on November 14, 1907, as alleged in the petition in the present case, "was then in the employ of plaintiff as off-bearer (to wit, carrying away pieces of thin lumber after same had been sawed) at a veneer saw," and who then "sustained bodily injuries accidentally suffered by reason of the operation of the business or trade of the plaintiff." The defense now relied on is in substance that at the time Watson received his injuries he was a child under the age of 16 years, and engaged "at employment whereby its life or limb was endangered" within the meaning of section 6986-1

of the Revised Statutes of Ohio, and that defendant had indemnified plaintiff subject to a condition that the policy should not cover loss from liability for injuries suffered by "any person employed in violation of law as to age."

The cause was tried to the court and a jury upon the facts admitted by the pleadings and by an agreed statement, with certain exhibits, whereupon the court below in its charge stated, among other things:

> "I am of the opinion that the services which the boy was rendering for the plaintiff was at an employment whereby his life or limb was in danger, and therefore I instruct the jury to return a verdict in favor of the defendant."

It was agreed that plaintiff received the policy of insurance; that it gave defendant notice of the accident to Watson and of the bringing of his suit by his next friend; that Watson was at the time of the injury in plaintiff's employ and that the employment and the work carried on were covered by the policy; that the defense to the suit brought by the boy was conducted jointly by the attorneys of plaintiff and defendant, but without prejudice to the rights of either; that judgment and costs were recovered in the sum of $2,587.96; that by agreement then made by the parties to the present suit no proceedings in error were taken and the judgment and costs were paid by plaintiff to Watson, and that defendant refused to reimburse plaintiff; also that, previous to entering upon his employment, Watson placed with the plaintiff an "age and schooling certificate as required by the laws of Ohio," from which it appears that he was born July 9, 1892, and that at the date of the certificate, July 31, 1907, he was four feet six inches in height, and that he could read at sight and write legibly simple English sentences.

The statute then in force was section 6986–1, enacted April 8, 1890 (87 Ohio Laws, p. 161), which provided:

> "No child under the age of sixteen years shall be employed by any person, firm or corporation in this state, at employment whereby its life or limb is endangered, or its health is likely to be injured, or its morals may be depraved by such employment."

The ultimate inquiry is whether the service assigned to Watson was dangerous to life or limb.

The veneer saw is circular in form, and with its attachments is 68 inches in diameter. Its weight is about 1,000 pounds. It has an axle resting upon bearings near the floor of the room in which it is operated; about 45 inches of its diameter being above the floor. It is operated by steam power applied through belts and shafting. When once set in motion, the power is removed by pulling a rope attached to an idler and so loosening the driving belt; but, owing to the weight and rate of speed of the saw, it continues to revolve for some time. The method adopted for stopping the saw after release from the power was to "jam" a piece of scantling between the edge of the floor and the disk of the saw. The boy Watson attempted to stop the saw in this way, and one of his arms was caught in the teeth of the saw and so injured as to require amputation near the shoulder.

It is agreed that it "was no part of his duties either to start or stop the saw." It was further agreed that the operator of the veneer saw,

Stevens, would testify that on two or three occasions he found "that the boy Watson had run around and tried to stop the saw by putting in a stick"; that instead of giving him orders to do so, whenever he did stop the saw he, Stevens, told him to "stop monkeying with the machine"; also that the head sawyer, Smith, would testify that he had supervision of two saws, the one operated by Stevens and the other by himself; that he also noticed that as soon as the operator would stop the machine "the boy would run around with the stick and stop the saw"; that he told him "on at least half a dozen occasions not to do this, as he would get hurt sure."

The contention made is that plaintiff did not violate the statute in question, because Watson was not employed to stop the saw, but was employed as an off-bearer of the thin boards as they came from the saw, and that, if he had confined himself to the performance of the duties assigned to him, he could not have been hurt. A better understanding of this contention and of the situation will be gained by further description.

The relative positions of Stevens, the operator, and Watson, the off-bearer, with respect to the saw during much of the time that they were at work were about the same. In photographic views offered to display the disk of the saw and side of the carriage Stevens is represented as standing at the right and Watson at the left of the edge of the saw, and each about five feet away from it. Stevens applied and turned off the power by means of a rope, and by levers operated the carriage bearing the log and adjusted the latter to the saw. Watson would alternately sit and stand at the end of a spreader 51 inches long and 30½ inches high. The spreader extended in front of the saw, and was used for separating the boards from the log as the sawing progressed. This enabled Watson to receive and remove the boards. The conclusion of the court below upon the facts was:

"Two persons were necessary to operate the saw. One was the man Stevens, who managed the carriage and brought the log into contact with the saw, and the other was the boy, who steadied the boards after they passed a given point, as they were sawed from the log, and finally bore them away to a pile. His services were as necessary as those of Stevens."

The claim made in behalf of plaintiff is that the language of the statute forbidding placing a child under the age of 16 years "at employment whereby its life or limb is endangered" limited the inhibition to service that could not be performed without danger to life or limb; and hence that no employment would be regarded as dangerous to life or limb of the child unless it involved operating or assisting in operating a dangerous machine. But does this take into account either the import of the words of the statute, or the purpose of such legislation?

We do not find it necessary to consider whether the duty imposed upon Watson as off-bearer literally involved operating or assisting to operate the veneer saw. It is hard to conceive that an adult, much less a child, could reasonably be expected at all times to keep all parts of his body within the bounds set for this off-bearer. He was for a substantial portion of his time required to stand and work within five

feet of this obviously dangerous saw. An unguarded step or movement resulting in an accidental fall might bring him into contact with the saw. He was within easy range of injury in the event of breakage of the saw or other mishap, due to its great size and speed. The inevitable strain of such a position and the indifference to danger that would naturally follow cannot escape notice; for these conditions and also childish curiosity must have combined to induce Watson to rush away from his position so frequently in spite of admonition and stop the saw.

Enough appears in the record to suggest some comparison between the danger attending the work of the operator and that of the off-bearer. We are unable to see how manipulation of the rope for turning on and shutting off power in operating the veneer saw, or how working the contrivances used for moving the carriage bearing the log and adjusting the latter to the saw, could be attended with danger to life or limb exceeding that incurred by the off-bearer while discharging his regular duties. It does not appear from the photographs or from anything we have found in the record that the operator is required to make nearer approach to the saw while in operation than the off-bearer is; and it would seem that the duties of the person operating the veneer saw are probably lessened by the fact that the head sawyer has supervision of the veneer saw as well as of the saw that he operates personally. Is it to be said that the inhibition of the statute would be applied to the one position and withheld from the other? The accepted meaning of "endanger" embraces exposure to injury coming from without as well as from within a given place or object. It is conceivable that there are many instances where attendants may incur danger quite equal to that of the operators themselves; but it is hard to conceive of a legislative purpose to furnish protection against only one of such dangers.

It is to be regretted that the Supreme Court of Ohio has not had occasion to construe either the old act or the new one (passed February 28, 1908; 99 Ohio Laws, p. 30). The only mention made of either act is that found in Jacobs v. Fuller & Hutsinpillar Co., 67 Ohio St. 70, 65 N. E. 617, 65 L. R. A. 833, in which that court held that it was error in the trial court to instruct the jury that it could consider the employment of plaintiff, a boy under the age of 16 years, a violation of the statute, as a circumstance bearing upon the alleged negligence of his employer. Under this rule, violation of the act may be conceded and only its relevance to the issue of negligence denied.

Reference is made to Breckinridge v. Regan, 22 Ohio Cir. Ct. R. 71. A girl of 15 years had been employed by plaintiff to operate a machine used for stamping and cutting tin. The court said that "it may be regarded as a machine at least somewhat dangerous." Although no question was made in the trial below concerning the act now in question, yet the reviewing court upon suggestion of counsel considered the bearing of defendant's violation of the act upon the question of its negligence. It is true that in applying the statute to the facts of that case the court regarded the act as indicating that in the judgment of the Legislature children of the age of plaintiff "are unfit by reason of

their indiscretion to be employed in the operation of a dangerous piece of machinery." But there was no fact calling for any statement, and none was made, that the act could not be violated unless an employer should direct a child to operate a dangerous machine.

During the argument of the present case a typewritten paper said to be a copy of an unreported opinion of another Ohio Circuit Court was presented and read without objection. The case seems to be analogous to the one under review. It is Ohio Moulding Manufacturing Co. v. Standard Life & Accident Insurance Co. It was decided in December, 1903, by the Circuit Court sitting in Cuyahoga county. The action was to recover upon a policy of insurance similar to the one now in question. It was alleged, say the court, when speaking of the child who had been employed:

"That the employment was of a dangerous character whereby his life and limbs were in danger and specifying that the employment was about a rapidly moving circular ripsaw."

It is to be observed that the statement is that "the employment was about a rapidly moving circular ripsaw," not that the boy was either operating or assisting in operating the saw. Judgment was given in the court of common pleas in favor of the insurance company. After passing upon various questions of evidence and waiver, the Circuit Court in affirming the judgment below said:

"The issues fairly made by the pleadings, whether the employment of Uhas was in violation of the statute above quoted, and therefore any accident to him not within the terms of the policy. The court refused to submit this issue to the jury, but said to the jury that the employment of the boy, if under 16 years of age, to work in the place where he was injured, was unlawful. In so charging the jury it is claimed that the court erred. It is true that a question of fact was raised by this issue, and it probably would have been better to have submitted that issue to the jury for determination; but, after a careful consideration of all the testimony bearing upon that issue, it is made certain that the jury must have found the employment to have been unlawful. Any other conclusion than that reached by the jury would not have been permitted to stand. We are therefore of opinion that this judgment should not be reversed for this alleged error."

Prior to the enactment of the statute of April 8, 1890, the Supreme Court of Ohio in Rolling Mill Co. v. Corrigan, 46 Ohio St. 283, 20 N. E. 466, 15 Am. St. Rep. 596, declared as a rule of general law concerning employment of a child under the age of 14 years and placing him at work in close proximity to a moving belt passing over revolving wheels that:

"Persons who employ children to work with, or about dangerous machinery, or in dangerous places, should anticipate that they will exercise only such judgment, discretion, and care as is usual among children of the same age, under similar circumstances, and are bound to use due care, having regard to their age, and inexperience, to protect them from dangers incident to the situation in which they are placed. * * *"

The effect of that decision is clearly to impose upon an employer of children the duty to take into account their inexperience and heedlessness when assigning them to work about a dangerous machine. There is nothing in the decision which recognizes any right in an em-

ployer simply to set bounds within which a child shall work in close-proximity to a dangerous machine, and escape liability as claimed in the present case on the assumption that the child either will or at his peril shall keep within those bounds. The importance of the decision, as we view it, is that it is inconsistent with any inference that the Legislature by its enactment passed within little more than one year after the date of the decision intended to restrict the statutory law to narrower limits than those of the general law as announced by the highest tribunal of the state.

It is deserving of remark that the only persons connected with the company who appear to have said anything to Watson concerning dangers of the saw were the head sawyer and the operator of the veneer saw. While disclaiming having any control over him, they simply warned him of the danger of stopping the saw. It was the assistant superintendent who employed Watson, but although he knew Watson was under the age of 16 years, it is not shown that he or any one else having control over Watson ever gave him any instructions in regard to the dangers of the saw. Upon the question whether plaintiff assigned and kept Watson at an "employment whereby his life or limb was endangered" within the meaning of the statute, attention must be given not only to the knowledge and conduct of the plaintiff, but also to the obvious intent of the Legislature to protect children within the prescribed age against their own incautious tendencies. Several different illustrations of this latter feature may be seen in decisions of the Supreme Court of Michigan, when construing an act similar to the Ohio statute.

In Braasch v. Michigan Stove Co., 153 Mich. 652, 118 N. W. 366, 20 L. R. A. (N. S.) 500, recovery was allowed in favor of a boy under the age of 16 years who had been injured in running an electric freight elevator in a factory. Testimony was offered to show that at the time of his employment the boy was 14 years and 8 months old. It was claimed in his behalf that his employment was in violation of the statute of that state prohibiting employment of children under the age of 16 years where dangerous to life or limb. The court took judicial notice that a "freight elevator is a place of danger to life and limb in the hands of an inexperienced boy of 14 years," and said:

"An elevator, like many other machines, is a reasonably safe machine under proper management. But accidents are not infrequent. Any construction of the statute which does not take into account the inexperience and natural heedlessness of children overlooks an important consideration. Undoubtedly it was passed to protect children against accidents, which in adults might well be said to result from negligence on the part of the victim, but which in children would be largely due to a want of experience, or heedlessness, for which experience is ordinarily the only cure."

The same court in Dalm v. Bryant Paper Co. (Mich.) 122 N. W. 257, decided July 15, 1909, again passed upon the same statute. The court affirmed a judgment in favor of a boy between 15 and 16 years of age, who had been employed in a paper factory as a "winder boy." It appeared that at the time of receiving his injury he was passing along an aisle five feet wide, not however in performance of his duties as winder boy, but in execution of an order to carry some material called "broke." The aisle was formed by two rows of machines called

"calendar stacks," each consisting of rollers one above the other to the height of about 12 feet. The boy had taken up an armful of material to carry it out; and some of it being caught between certain of the rollers drew his arm between them. In answer to the claim that the work as winder boy was without danger to life and limb, and that the order he had received to enter the aisle and carry away the paper was delivered by a fellow servant, the court said (page 259):

"Can it be said, even if the work of the winder boy in this manufactory was without danger to life and limb, which we do not determine, that he can be required to do this dangerous work, and thereby become a fellow servant with the person ordering him to do it? * * * If it may be done, then the duty imposed by the statute, and liability for neglect of such duty, may in every case be avoided."

Thus the court again treated the boy as an object for protection under the statute, even though he was at the time of his injury only in close proximity to the dangerous machine; and this too in spite of the fact that he was not operating the machine containing the rollers.

In Sterling v. Union Carbide Co., 142 Mich. 284, 105 N. W. 755, in considering the question of alleged contributory negligence respecting the conduct of a boy between 15 and 16 years of age while feeding metal into a corrugating machine, where his hand would not in the ordinary course of the work be nearer the roller than the width of the metal, the court said:

"The statute takes cognizance of the immaturity of judgment of children under 16. * * * To construe this statute as designed to protect children from such dangers only as could not be obviated by persons of mature judgment would render it nugatory."

In Morris v. Stanfield, 81 Ill. App. 264, a statute was under consideration forbidding employment of a child under 13 years of age for any period of time greater than one day, unless a school board should give a certificate that an aged or infirm relative was depending upon the child. No certificate was obtained, but it was claimed in defense that the boy and his mother represented his age to be more than 13. The boy was placed at work at a table near a circular saw and was charged with the duty of passing bones to the operator of the saw. Through playful contact with a boy working close to him, he threw one of his legs under the table and was injured by the saw. In affirming the judgment below, the court said (page 273):

"Greater care on the part of employers is required when the young and inexperienced are exposed to dangerous machinery. They cannot be expected to see and appreciate dangers that older and more experienced persons would see."

In considering the foregoing decision, we do not overlook the absolute character of the inhibition of the statute in the absence of certificate. But there can be no difference in principle between an absolute inhibition and a conditional one, wherever the condition is not observed. As said in Sullivan v. Hanover Cordage Co., 222 Pa. 40, 70 Atl. 909, when speaking of a statute making it unlawful for employers operating certain dangerous machinery to employ a minor under 16 years of age to clean or oil machinery while in motion:

"We agree that if the machine at the time of the cleaning was not in dangerous motion such as was usual in its operation, and if the motion at the time of the cleaning was not dangerous but simply consisted in partial revolutions made from time to time in order to facilitate the cleaning, the prohibition of the statute would very properly be held inapplicable."

In that case the question of whether the machinery was being operated in the usual way or not was submitted to the jury, and the judgment of the court below allowing the verdict in favor of the boy to stand, was affirmed. It is perfectly true that this decision recognized the right to employ a boy within the prescribed age to do work not calculated to cause injury, but it is equally true that it reduced the question of danger to one of fact.

When plaintiff's contention in the present case is reduced to its last analysis, its strength or weakness is to be found in the assumption that the place where Watson worked did not endanger life or limb. This assumption is greatly impaired by plaintiff's failure when placing and keeping the boy in such close proximity to the saw to reckon with the lack of caution of boys of his age. The fact that the boy did not meet with his injury while working within the place assigned to him, or the fact that he was not in line of duty when he suffered his injury, does not show that the place in which he was directed to work was not dangerous to life or limb. According to the understanding we gain of the place and its surroundings from the record, as before shown, we regard the first one of these facts as accidental rather than as evidence of safety. We consider the other as evidence of what might reasonably have been anticipated of an immature and energetic boy. But the main ground of our conclusion, as before pointed out, is that throughout a large portion of the boy's work he was required to stand at the spreader and attend to the boards as they were being sawed from the logs, and so was necessarily exposed to danger from the saw. We do not mean to hold that a boy could not be put at work in any factory or in this factory without danger to life or limb. What we do mean to hold is that this place in this factory did involve such danger.

We have reached this conclusion after considering all the decisions cited by counsel for both sides. We have not attempted in this opinion either to reconcile all of the cases cited or to point out the distinctions which we conceive to exist between many of them and the case in hand. Several of the decisions cited on behalf of plaintiff in error might at first blush be considered as supporting its contention; but that would mean, if the claim respecting them be correct, that those courts intended to fasten a degree of care upon a child equal to that ordinarily imposed upon an adult. That would contravene a rule of decision of this court concerning the degree of care exacted of minors. Wright v. Stanley, 119 Fed. 330, 332, 56 C. C. A. 234; Erie R. Co. v. Weinstein, 166 Fed. 271, 274, 92 C. C. A. 189; Coney Island Co. v. Dennan, 149 Fed. 687, 692, 79 C. C. A. 375. See, also, Railroad Company v. Fort, 17 Wall. 553, 558, 21 L. Ed. 739; Union Pac. Ry. Co. v. McDonald, 152 U. S. 262, 281, 14 Sup. Ct. 619, 38 L. Ed. 434; Northern Pac. Coal Co. v. Richmond, 58 Fed. 756, 759, 7 C. C. A. 485; Rolling Mill Co. v. Corrigan, 46 Ohio St. 283, 20 N. E. 466, 15

Am. St. Rep. 596 (before cited). The result would be to limit unduly and in large measure to defeat the object of the statute.

We may refer to one decision relied on by plaintiff's counsel and so reflect our views in regard to some other cases cited. We allude to Lowe v. Pearson (1899) 1 Q. B. 261. It appeared in that case that a boy was employed in a pottery to make balls of clay and hand them to a woman working at a machine, with which he was forbidden to interfere. He suffered an injury through attempting to clean the machine while the woman was temporarily absent. He sought to recover for the injury under the workman's compensation act of 1897. That act imposed liability only in respect to accidents "arising out of or in the course of the employment" of the workmen. It made no distinction between claimants, whether minors or adults. Pub. Gen. St. 60–61 Vict. c. 37, p. 53. Respondent failed utterly to bring himself within the condition imposed by the statute; for plainly his injury did not arise "out of or in the course of" his employment. The Ohio act was made to apply only to minors. It did not purport to impose liability upon the employer in favor of the child. The important difference to be noted now between the two statutes is that the act of Parliament makes the right of recovery against the employer depend upon certain conduct of the employé; while the Ohio act made the child the object of protection against certain conduct of the employer.

Nor do we regard our conclusion as affected by the contention that the statute under consideration is in derogation of the common law, and must be strictly construed for that reason. As a general rule of construction, no one would dispute this. But it will not do to carry that rule so far as to sacrifice plain legislative intent. As said by Taney, Chief Justice, in one of the cases relied on by plaintiff (United States v. Morris, 14 Pet. 464, 475, 10 L. Ed. 543), that, while penal statutes should be construed strictly, "yet the evident intention of the Legislature ought not to be defeated by a forced and overstrict construction." See, also, Johnson v. Southern Pacific Co., 196 U. S. 1, 17, 25 Sup. Ct. 158, 161, 49 L. Ed. 363.

It follows that the judgment of the court below must be affirmed; for we do not understand any claim to be made that, if Watson was in fact placed and kept at employment dangerous to life or limb, there can be any recovery under the condition of the policy.