BRANCHEAU v. MONROE BINDER BOARD CO.

MASTER AND SERVANT—EMPLOYMENT OF MINORS—HAZARDOUS OCCU-
PATION—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT.
In an action against his employer by a 15-year old boy
for personal injuries sustained by him while operating
an unguarded scoring press between 7 and 7:30 p. m.,
claimed to be a hazardous occupation, where the hiring of
plaintiff and allowing him to work at night were in
violation of 2 Comp. Laws 1915, §§ 5330-5332, the trial
court was, under the evidence, in error in directing a
verdict in favor of defendant on the ground of plaintiff's
contributory negligence.[1]

Error to Monroe; Hawley (Royal A.), J., presiding.
Submitted June 4, 1924.   (Docket No. 30.)   Decided
April 3, 1925.

Case by Alton Brancheau against the Monroe Binder
Board Company and others for personal injuries.
Judgment for defendants on a directed verdict.   Plain-
tiff brings error.   Reversed.

*Henry Messimer* and *Elmer H. Groefsema*, for ap-
pellant.

*Willis Baldwin*, for appellees.

MOORE, J.   The plaintiff was injured while oper-
ating a scoring press while making targets for the
government, and brought this suit to recover damages.
We quote from the declaration:

"That at the time he sustained the injuries herein
complained of, he was a minor 15 years of age, that
it thereupon became and was the duty of the defend-
ant to comply with the provisions of sections 9, 10,

---

[1] Master and Servant, 26 Cyc. p. 1482.

and 11, Act No. 220, Pub. Acts 1911, being sections 5330, 5331, 5332, 2 Comp. Laws 1915, and in particular with that portion of section 9 of said act, which provides:

"'No child under the age of 16 years shall be employed in any manufacturing establishment or workshop, mine or messenger service, in this State between the hours of 6 o'clock p. m. and 6 o'clock a. m.'

"That it then and there became and was the distinct further and other duty of the defendant to comply with that portion of the provisions of section 11, Act No. 220, Pub. Acts 1911, as follows:

"'No female under the age of 21 years, and no male under the age of 18 years, shall be allowed to clean machinery while in motion nor employed in or about any distillery, brewery or any other establishment, where malt or alcoholic liquors are manufactured, packed, wrapped or bottled, nor in any hazardous employment, or where their health may be injured or morals depraved, nor shall females be unnecessarily required in any employment to remain standing constantly.'

"Yet the defendant Monroe Binder Board Company, while knowing · its duty in this regard, negligently failed to do and perform the same. * * * That defendant Monroe Binder Board Company negligently failed to and did not comply with the provisions nor with any of the provisions of the statute above cited and quoted; but that on the contrary, defendant Monroe Binder Board Company employed plaintiff in direct violation of the provisions of the statute herein cited and quoted."

The plaintiff when less than 16 years of age entered into the employ of the defendant. It is defendant's claim that the boy and his father both said he was 16 years old at that time. He was set to work as a "stripper." Here we quote from the brief of counsel for defendant:

"The defendant at that time was making paper · targets for the army. These targets were cut out of paper board in a press similar to a hand printing press. There are two plain tables, one at the right

and the other at the left of the press, both within reach of the operator of the press.   The operator of the machine sits between these tables.

"It is the duty of the 'stripper' to pile paper stock on the right hand table, which the operator of the machine runs through the press, one piece at a time. After the piece of paper goes through the press the operator (feeder) takes it out and lays it on the table to the left of the press.   Then the 'stripper' knocks off the cut edges of the paper so cut and piles it up ready to be tied.   These cut edges of the paper board are knocked off with a hammer by the 'stripper.'   This is called 'stripping,' from which this workman evidently gets his name as a 'stripper.'   He uses no machine.   As shown by the photographs, the tables are between the 'stripper' and the press.   The table on the left hand is between the 'stripper' and the belt which runs the press.   It is not necessary to come in contact with the machine or press.

"Plaintiff worked as a 'stripper' from the time he was employed until the day of the accident about two months later until 5:30 p. m., when, he says, that night he was transferred to a press, or cutting machine, by one of the other men, Chaplain, and that he was injured on the machine between 7 and 7:30 p. m.   At that time it seems that the man who operated this machine was not there.   This was the first time plaintiff had ever run the press or cutting machine."

It was the claim of the plaintiff that he was inexperienced and was not properly shown how to operate the machine, and that it was not a safe place to work.

We again quote from the brief of counsel for defendant:

"The plaintiff according to his own story was familiar with these machines and any possible dangers. He had 'stripped' alongside of them from August to the night he was hurt, and for eight days alongside of this machine.   He says Chaplain set the machine and told him what to do and fed three or four boards. He says:

" 'Q. You knew how it operated, did you?

" 'A. Yes.

" 'Q. You knew when that lower jaw came in contact with the upper jaw they came solidly together?

" 'A. Yes.

" 'Q. And it come together?

" 'A. Yes.

" 'Q. And you knew that if you put your finger in there that it would be cut off, the same as if it was cutting off sheets?

" 'A. Yes.  *  *  *

" 'Q. And I presume you knew at that time that anybody that left his fingers in there would get them cut off, didn't you?

" 'A. I sure did.'  *  *  *

"He told the night foreman, Mr. Hurley, that 'he reached after a "bloke" twice, and as he reached the second time, as he got it, it got him.' A 'bloke' is a piece of paper board in the press."

Upon the conclusion of the testimony the trial judge directed a verdict for the defendants upon the theory that plaintiff was guilty of negligence as a matter of law, and counsel says he was justified in doing so by the case of *Beghold* v. *Auto Body Co.*, 149 Mich. 14 (14 L. R. A. [N. S.] 609), and *Pequignot* v. *Germain*, 176 Mich. 659.

It is desirable to consider some of the testimony of witnesses in the employ of the defendant. We quote:

"The machine where the boy was hurt was a machine cutting these forms. It stands about three feet, forty-two inches, and it is quite similar to the hand printing machine, except that it is larger and it has two jaws, one folds down and the other is permanent and the die is on the one that folds down, a man puts in a sheet and if it doesn't get to the plate, the sheet is fed against a block and as it cuts one he is reaching for another and each time it opens you put in a sheet upon that machine and there is a safety guard, a guard that operates from a cam, each time the jaw closes the cam raises that safety guard up and it is supposed to be safe at all times. It raises and shoves his arm out of the way.  *  *  *

"This safety device, when the jaw is open, fits

tightly against the frame of the machine.    As the jaw closes, it raises the cam eight inches from the machine.    In feeding, after the jaws open, the sheet as it is fitted into the machine comes on a flush with the jaw and this guard raises to prevent accident to a distance of approximately eight inches while the jaw is closing.    *    *    *

"These safety guards are a necessary part of the machine in order to make it safe to operate.

"*Q.* In order to make it safe to operate, those safety guards are a necessary part of the machine, are they?

"*A.* In order to make it safe.

"*Q.* The operation without the safety guard would make the machine dangerous, would it?

"*A.* Not necessarily dangerous, but more dangerous."

Another one testified in part:

"The purpose of the guard is to keep accidents from happening—for the prevention of accidents.    The guard raises up as the press closes and naturally throws the hand away from the machine.    Unless a person slipped off and fell, he couldn't get his hand in the machine with this guard attachment on it. In operating this machine, the general method was for the operator to sit down.    It wouldn't be possible for a person sitting down in operating this machine with a guard on it to get his fingers into the machine.    *    *    *

"*Q.* You say when the new one came in, do you mean this one?

"*A.* Yes, they wouldn't allow me to operate without a guard.

"*Q.* Does that guard come from the manufacturer of the machine?    With the machine?

"*A.* No, I made that guard myself."

The plaintiff was hurt within two hours after he was set to work.    He was under 16 years of age. He was injured at 7:30 o'clock in the evening.    He testifies there was no guard on the machine he was operating.

We think the case easily distinguishable from those

cited by counsel for the appellees to which we have referred, and that the case should have been submitted to the jury under *Radic* v. *Thomas Jackson & Co.*, 178 Mich. 618; *Edward* v. *Basket Factory*, 187 Mich. 505; *Gee* v. *Brunt*, 214 Mich. 679; *Grand Rapids Trust Co.* v. *Petersen Beverage Co.*, 219 Mich. 208; and *Szelag* v. *Jordan*, 223 Mich. 672.

The judgment is reversed and a new trial ordered, with costs to the appellant.

McDONALD, C. J., and CLARK, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.