KIRKPATRICK ET AL. v. FERGUSON-PALMER COMPANY.

[77 South. 803, In Banc.]

1. DEATH BY WRONGFUL ACT. *Recovery at common law.*
   By the common law there could be no recovery of damages for
   the death of a human being.

2. DEATH. *Loss of services of child. Measure of damages.*
   Even though the wrongful employment of a minor without the
   consent of his mother be an actionable wrong, the measure of
   damages under the common law would be no greater than would
   be the measure of damages if defendant were guilty of the
   wrongful or negligent killing of the boy. In other words with-
   out our statute, recovery would be limited to services lost dur-
   ing the minority and prior to the death of the child.

3. DEATH BY WRONGFUL ACT. *Negligence. Statutes.*
   Chapter 214, Laws 1914, simply re-enacts or brings forward in
   amended form section 721, Code 1906, the only statute giving
   the right of recovery for injuries producing death. The essential
   nature of the recovery under the statute in its present amended
   form is the same under the Code of 1906. The true test of any
   right to recover under the statute is whether the deceased could
   have maintained an action had death not resulted so that if
   the servant would have no action against his master his next
   of kin could not sue under the statute.

APPEAL from the circuit court of Chickasaw county.
HON. J. L. BATES, Judge.

Suit by Lucretia Kirkpatrick and others against the
Ferguson-Palmer Company. From a judgment for de-
fendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Thos. E. Pegram* and *Jeff Busby,* for appellant.

We do not insist, nor did we so insist after the proof
was in the lower court, that there was such negligence
in the felling of the tree by the servants of the appellee
as would entitle the heirs or legal representatives of
Buddy Kirkpatrick to recover for the loss of his life.

The declaration as amended states a cause of action occurring to Mrs. Kirkpatrick by reason of the fact that the appellee employed her minor son without her consent and put him to work at a dangerous undertaking and in a dangerous locality and that he was injured while in said employment and in said place, said injuries resulting in his death, and that by reason of said events she lost the services of her son during his minority.

Opposing counsel, in urging that a parent cannot recover for the loss of services of a child when death is instantaneous if that loss results from the wrongful employment of the child against the parents' consent, cites a multitude of authorities, all of which we have not had the opportunity to examine; but an examination of those at hand demonstrates most conclusively the error into which he has fallen. He has failed to distinguish between an action brought by the parent for the death of the child against one who has negligently killed it, and an action brought by a parent against one who has wrongfully employed the minor child without the parent's consent and placed the child to do a dangerous work or work in a dangerous place whereby the child is injured or killed. In the one instance the gist of the action is the negligent killing, and in the other it is the wrongful employment. He has apparently overlooked the fact that the parent has a property right in the services of the child.

In *Braswell* v. *Oil Mill* (Ga.), 66 S. E. 539, we find this language: "Touching the services of an infant, it may be said upon the surest footings of reason and law the parent has his property right. In *Shields* v. *Younge,* 15 Ga. 356, 60 Am. Dec. 698, the question is asked and answered: 'May a father treat his minor son as his servant and sue for an injury to the son as for an injury to a servant?' If the son be old enough to render services he may. This statement is cited and approved in *Amos* v. *Atlantic, R. R. Co.,* 104 Ga. 809, 31 S. E. 42. In *Lewis* v. *McAfee,* 32 Ga. 465, the supreme

court decided that if one hired his slave to a railroad company for a particular service, and the latter used the slave for a different purpose of service, and an accident happened causing the slave's death, the railroad company was liable to the owner for the value of the slave; and the court in the course of the opinion places the case on the old and well-recognized common-law doctrine that the thing hired is used for a different purpose than that intended by the parties, etc. ''That an employer putting a minor child, without the parent's consent to do work by which the child is injured, commits an actionable wrong, which will authorize the parent to recover for the loss of such services as he should have received during the child's minority, is a principle almost universally recognized wherever the common law prevails.''

Our opponent admits that it is the rule in Georgia that in case of the death of the infant, the parent may recover the loss of the child's services for the wrongful employment, but with much assurance states that such is not the rule in any other state in the Union. If the logic of the Georgia court is sound, that the father has a property right in the services of his infant son and may treat such son as his servant, and that the rules of law governing the two relations are the same, then our own Mississippi court is in line with the former court holding that at common law a master may recover for the death of his slave where that slave was employed for a certain purpose and to work in a certain place, and was by the employer taken to another place which resulted in the slave's death. *Wallace* v. *Seales,* 36 Miss. 53.

In the case of *Haynie* v. *Power Company,* 157 N. C. 503, 73 S. E. 198, Ann. Cases, 1913C, which is a case where the boy was instantly killed the court, in referring to the editor's notes to the case of *Hendrickson* v. *Railroad Co.,* reported in 30 L. R. A. (N. S.) 311, said:

"the sum and substance of the many cases cited in those notes are that the general rule is that an employer, putting a minor servant, against his parent's consent, to do work by which the child is injured, commits an actionable wrong for which the employer is liable, although there is no evidence of negligence on his (the employer's) part. *Railroad Company* v. *Fort*, 17 Wall. 553, 21 U. S. (L. Ed.) 739, and cases there cited in Rose's notes annotating this case."

This was no statutory action on the part of Haynie. To our mind, however, the case which most satisfactorily disposes of the question raised and urged by appellee, is the case of *Williams* v. *Railroad Company* (Ala.), 9 So. 77. There the infant son of Thos. Williams had been instantly killed by the railroad company.

Under the Alabama statute, section 2590, of the Code which is in many respects similar to our own chapter 214, of the Laws of 1914, except that in case of death the right of action was vested in the personal representatives of the deceased and not in the father. In that case the father sued without qualifying as the personal representative, and the declaration consisted of several counts, some of which were for the negligent and wrongful killing of his son, and in these particular counts it was not negatived that the employment was with the father's consent, and that since this was not done the father could not, under the common law, maintain his action. However, there were other counts of the declaration by which the father sued for the loss of services of his son, alleging that the son was employed without his consent to do the work of a railroad brakeman and was killed while about said work. This phase of the suit was brought under the common law and section 2588 of the statute which is most nearly in terms, chapter 214, Laws 1914, and the Alabama court held that those counts stated a good cause of action.

Of all of the cases cited in the brief of opposing counsel which we have had the opportunity to examine, the cause of action was brought by the parent for the death of the child without statutory authority, and in none of those cases, except the *Railroad Company* v. *Beal,* 61 Tex. 310, do we find that there were any allegations to the effect that the infant was employed without the consent of the parent. In fact, it appears from an examination of the authorities that the precise question here raised by appellee has not been passed upon so numerously, and that the Georgia, North Carolina, and Alabama courts have settled it according to our contention, and that the Texas court in the one case is favorable to the contention of the appellee.

The foregoing is stated in an effort to show that even at common law a parent could recover for the loss of services of his child during minority under the character of case in question.

In addition to the above we insist most earnestly that chapter 214, of the Laws of 1914, is sufficiently broad in its terms to enable Mrs. Kirkpatrick to maintain this suit for the loss of her son's services during minority.

The legislature has from time to time so changed and widened this particular statute, and has thereby so revolutionized the common-law rules as regards injuries resulting in death that there is hardly a conceivable case where a party could recover for injuries not resulting in death, yet would be deprived from recovery on the ground that death did result. To put the case differently, the legislature has, without leaving any room for question - or quibble, abolished all distinctions, as to right of recovery, between those injuries from which death ensues and those from which it does not.

The court, of course, has the entire chapter in mind, but those parts thereof which particularly emphasize what is above stated are: ''And the fact that death was instantaneous shall, in no case, affect the right of

recovery." . . "All parties may join in said suit and there shall be but one suit which shall inure to the benefit of all parties interested." "In such action the party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all of the damages of every kind to the decedent, and all damages of every kind to any and all parties interested in said suit." It will be found that the learned trial judge, in rendering his opinion stated that Mrs. Kirkpatrick might maintain her action for the loss of the boy's services during minority under this section.

There can be but one suit, where injury results in death. *Foster* v. *Hicks,* 93 Miss. 219, 46 So. 533; *Mississippi Oil Co.* v. *Smith,* 95 Miss. 528, 48 So. 735. The case of *Natchez etc., R. R. Co.* v. *Cook,* decided in 1885, and cited by counsel for appellee as putting this question at rest in his favor turns out to demonstrate conclusively appellee's erroneous position, as will be seen.

Section 1510 of the Code of 1880 vested in the father alone the right of action for the death of a child, and did not vest such right in the mother. In the Cook case the mother brought the action for the injuries which resulted in the death of her son. These injuries were inflicted while said section 1510 was the law and before the section was amended in 1884, which amendment gave the mother as well as the father the right of action. Hence the court did hold that under the law at the time of the injury that no right was given the mother to maintain the suit for the services of the child from the time of his death until he would have become twenty-one years old. It is to be noticed, however, that that was not a case where the railroad company had wrongfully employed the infant son without his mother's consent. When the section was amended in 1884 it gave the mother the right of action and this has been the law down to the present time. Said sec-

tion as amended is now chapter 214 of the Laws of 1914.

The statement in the brief of our opponent to the effect that Mrs. Kirkpatrick has no cause of action unless her son, had he survived the injury, would have had one is not supported by any authority that we have examined. The right of recovery on the part of the son would have depended upon some negligent act of the appellee which resulted in the injury, in order for the mother to recover for the value of his services, since he was employed without her consent and put to work in a dangerous place, does not depend upon any negligent act of appellee causing the injury. In fact, the authorities cited in our original briefs and in this hold that she might recover under those circumstances even though the injury to the boy directly resulted from his own negligence.

We again urge, as in the original briefs, that the case should be reversed and a new trial ordered so that a jury might pass upon the facts as presented.

*R. H. Knox,* for appellee.

The undisputed evidence in this case, all of which was introduced by plaintiffs, shows that: (1) On September 13, 1915, defendant employed plaintiff's minor son, Robert Lee Kirkpatrick, as a "swamper" to trim around trees to be felled by defendant's cutting crew, and to trim up trees felled by the crew; and (2) at the time of his employment, said minor was eighteen years and three months old, and was large enough to be a man and in good health, and that he had been raised on a farm and had practical experience in raising corps and as a farm laborer and in hauling cross-ties and logs and having them sawed; and (3) that the duties of said minor to which he was assigned as a swamper were not within themselves dangerous or hazardous work for a person of said minor's age and health and

size and experience; and (4) that on September 16, 1915, said minor voluntarily and without the order, request, authority or knowledge of defendant or its foreman, and entirely outside the scope of his employment, took the place at the saw of one of the cutting crew engaged in felling a tree, who had stepped back to get a drink of water, and continued to saw until defendant's foreman appeared at the place and discovered him at said work and (5) that immediately upon his coming to the place and seeing said minor at the saw, the foreman informed said minor that sawing down trees was not his occupation and ordered him to let loose the saw and get out and warned him that the tree was about to fall and repeated the order and warning the third time, but said minor refused to obey the order and heed the warning and struck three or four more licks with the saw, and then let loose the saw and walked away three or four steps and then turned and looked at the tree, which at that moment fell upon him and crushed him to death; and, therefore plaintiff has no cause of action against defendant on account of the death of her said minor son, and defendant is in no manner liable to her for any loss, damage or injury resulting to her by reason of his death. *Mitchell* v. *McGee & Alford* (Supreme Court of Mississippi), 48 So. 234, 235, (decided Jan. 18, 1909).

*Chas. K. Wheeler,* for appellee.

An action commenced under chapter 214, of the Laws of 1914, of the state of Mississippi, providing that: "Whenever the death of any person shall be caused by any real, wrongful, or negligent act, or omission, or by such unsafe machinery, ways or appliances, as would, if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof," can only be maintained where it is shown that death was occasioned by a real, wrongful, or negligent act.

If the person killed could not have maintained an action if death had not resulted, those authorized by the statute to sue for the destruction of his life cannot do so. If the life destroyed be that of an infant, the fact of infancy does not enlarge the sanction of the statute. The right to maintain an action under the statute depends upon a real, wrongful, or negligent act, arising in such circumstances as would have authorized the life destroyed to have maintained the action if death had not resulted.

The right of the parent to maintain an action for loss of services for injury to an infant child, grows out of the contractual relation created by law and is not dependent upon the statute.

One who interferes with the right of the parent to the services of an infant child, raises a cause of action in favor of the parent, but such right exists at common law and is in nowise dependent upon the statute.

At common law no action would lie for the death of a human being. The right to recover is purely statutory, and the circumstance that the life destroyed was that of an infant, in nowise enlarges the right to sue under the statute.

At common law no recovery could be had for interfering with the right of a parent to the services of a child where death was instantaneous. Cooley on Torts (Student's Edition), page 271; section 142; 24 Cyc., 1641; *Trow* v. *Thomas,* 41 Atl. 652; *Natchez, J. & C. R. Co.* v. *Cook,* 63 Miss. 38; *Gulf, Colorado & Santa Fe Railroad Co.* v. *W. T. Beal & Wife,* 61 Texas 310, 42 S. W. 1045; 41 L. R. A. 807; 66 Amer. State Repts. 892; *Mayhew* v. *Burns,* 103 Indiana, 328; *Thomas* v. *Union Pacific,* 1 Utah 231; *Eureka* v. *Merrifield,* 53 Kans. 794; *Lake Shore & M. S. R. Co.* v. *Orvis,* 12 Ohio, 710; *I. C. R. R. Co.* v. *Slater,* 129 Ill. 91, 6 L. R. A. 418; *Insurance Company* v. *Brame,* 95 U. S. 754; *Eden* v. *Lexington & Frankfort R. R. Co.,* 14 B. Monroe 204; *Covington Street Railway Co.* v. *Packer,* 9 Bush. 455; *Anderson*

v. *Arnold,* 79 Ky. 373; *Gregory* v. *Illinois Central R. R. Co.,* 26 Rep. 77; *Jackson* v. *Pittsburgh, C. C. & St. L. R. Co,* 140 Ind. 241; *Sheffler* v. *M. & St. L. R. Co.,* 32 Minn. 125; *Kramer* v. *San Francisco Market Street R. Co.,* 25 Cal. 434; *Telfer* v. *Northern R. Co.,* 30 N. J. L. 188; *Lehigh Iron Co.* v. *Rupp,* 100 Pa. 98; *Baker* v. *Little Rock & Ft. S. R. Co.,* 33 Ark. 350; *Morgan* v. *Southern Pac. Co.,* 95 Cal. 510; *Edgar* v. *Costello,* 37 Amer. Rep. 714; *Davis* v. *St. L., I. M. & S. R. Co.,* 53 Ark. 117; *Brink et al.* v. *Wabash R. R. Co.,* 160 Mo. 87.

STEVENS, J., delivered the opinion of the court.

This is an action for damages instituted by Mrs. Lucretia Kirkpatrick, the mother, and certain named brothers and sisters of Robert Lee Kirkpatrick against appellee, Ferguson-Palmer Company, to recover damages for the alleged wrongful killing of the said Robert Lee, who at the time of his death was a minor and the eldest son of the said Mrs. Kirkpatrick. On the trial of the case the court excluded the plaintiffs' testimony and granted a peremptory charge in favor of the defendant. A motion to set aside the judgment and grant a new trial was by the circuit judge taken under advisement and overruled. From the adverse judgment appellants prosecute this appeal.

It appears that the deceased, Robert Lee Kirkpatrick, was employed by appellee as a "swamper." Defendant company was engaged in the sawmill business, in the prosecution of which it employed laborers to cut and fell large trees to be sawn into lumber. It was the duty of the deceased to trim up all trees felled by the cutting crew, and to clear up and remove obstructions around the trees which were to be cut. Robert Lee was employed by appellee without the mother's consent and was killed September 16, 1916, only three days after he was employed. Mrs. Kirkpatrick, the mother, is the sole surviving parent and her deceased son was about eigh-

teen years and three and one-half months old at the
time of his death.   The proof indicates that he was
a boy of at least average size; that he was raised on
a farm; that in the year 1915 he made a crop and
"hauled cross-ties and hauled logs and had them saw-
ed." The crew engaged in felling trees were busy saw-
ing down a tree when an employee at one end of the
saw stepped aside for a drink of water, and thereupon
the deceased, without any request or direction from
any one, took the employee Griffin's place at the saw.
In a moment the foreman, Mr. Denton, observed the
deceased in the act of sawing, and, according to the fore-
man's testimony, directed the deceased to turn loose
the saw and get back out of the way.   The boy did
not heed this direction, and almost immediately after
being ordered away from the saw the tree began to fall,
and in falling the tree struck the deceased and killed
him instantly.   The testimony of the foreman was not
materially contradicted.   The foreman testified:

"I told Buddy Kirkpatrick to get out of the way,
and he didn't.   I says, 'Get back out of the way,' and
he sawed on some two or three more licks, and the tree
popped, and I hollered to him to get back out of the
way again, and he made a turn to go, and I hollered
a third time to get back out of the way."

At another point:

"I says, 'You get away from there; that ain't your
place at all,' and I walked around the tree about six or
eight feet from the tree and told him again, and says,
'You get back away from there and turn the saw loose.
You haven't any business in there at all.' "

It appears further that all of the employees ran from
the falling tree except the deceased, who walked.   A
full and complete statement of all the testimony is un-
necessary, for the reason that in pressing the motion
for a new trial and in the presentation of this appeal
counsel for appellants concede their inability to recover
damages for the negligent killing of the minor, but ear-

nestly contend that the suit should now be treated and viewed as an action by the sole surviving parent to recover damages for the loss of services of her minor son. In making this contention counsel argue that the measure of damages would be the loss of services from the time of the wrongful employment until the deceased would have become twenty-one years of age. It is conceded that the deceased was killed instantly. The position of counsel may be stated in their own language copied from the brief as follows:

"We do not now insist, nor did we so insist after the proof was in the lower court, that there was such negligence in the felling of the tree by the servants of the appellee as would entitle the heirs or legal representatives of Buddy Kirkpatrick to recover for the loss of his life. The declaration as amended states a cause of action accruing to Mrs. Kirpatrick by reason of the fact that the appellee employed her minor son without her consent, and put him to work at a dangerous undertaking and in a dangerous locality, and that he was injured while in said employment and in said place, said injuries resulting in his death and that by reason of said events she lost the services of her son during his minority."

It is the contention of appellee, on the contrary, that at common law no action would lie for the death of a human being; that the right here to recover is purely statutory; that death was instantaneous; that the right to maintain an action under the statute depends upon a real, wrongful, or negligent act; and that the true test is whether the person killed could have maintained an action against the defendant company if death had not resulted.

It is useless to reiterate what has been, time and again, stated by all the courts that by the common law there could be no recovery of damages for the death of a human being. As stated by the supreme court of the

United States in *Mobile Life Ins. Co.* v. *Brame,* 95 U. S. 754, 24 L. Ed. 580:

"The authorities are so numerous and so uniform to the proposition that, by the common law, no civil action lies for an injury which results in death, that it is impossible to speak of it as a proposition open to question. . . . By the common law, actions for injuries to the person abate by death, and cannot be revived or maintained by the executor or [by] the heir. By the act of Parliament of August 21, 1846, St. 9 & 10 Vict. an action in certain cases is given to the representatives of the deceased."

The act of Parliament referred to (Lord Campbell's Act) forms the basis for statutes which have been enacted in practically all the states of the Union. The right to recover, then, being statutory, resort must be had to the statute for the right, the remedy, and the measure of damages. The frank admissions of counsel for appellants narrow the issue here presented. There was no negligence in the felling of the tree, and consequently no negligence that can be regarded as a proximate cause of the death chargeable to the master. The suit is not one to recover damages for the loss of services from the time of the wrongful employment to the date of the boy's unfortunate death. Death was instantaneous, and the effort here is to recover for services which the mother expected to receive from her son during his minority. Her claim for these expected services, in our judgment, cannot be allowed. It may here be conceded that if the minor had been merely crippled or disabled, appellee would have been liable for services lost during the minority as a result of the injury. The death of the minor, however, terminates the relationship of master and servant, and after death it is evident there could be no services. In the present case the falling of the tree and the apparent negligence of the deceased constitute the proximate cause. Death intervenes and destroys the relationship of master and

servant, and after death no right of the mother is in-
fringed, for the mother's right to services is gone.  It
might be speculation to assume that the boy would con-
tinue to live with his mother or to fix any time during
which the services would continue.  But aside from this,
the law deals only with the living and, generally speak-
ing, not·with the dead; and the great weight of author-
ity limits the master's right to recovery to those serv-
ices accruing prior to the death of the servant, or, in
this case, to those services of the boy accruing prior
to his death.  The argument of counsel seems to be
divided into two main contentions:  First, that the re-
covery here is based upon the common law altogether;
and, secondly, upon both the common law and upon our
amended statute (chapter 214, Laws of 1914).  Many
cases may be found holding that if the master employs
a minor child without the consent of the parent and
places him to work at a dangerous place, he is liable
"for any injury as the result of being placed at such
work."  See on this point *Woodward Iron Co.* v. *Curl,*
153 Ala. 205, 44 So. 974; editor's note, 28 Ann. Cas. 234.
No quarrel is here to be made with these authorities.
The great weight of authority limits the measure of
damages to those services accruing prior to the death of
the child.  Our court has long since indicated this to be
the true rule.  This measure of damages was indicated
by our court in 1885 in *N. J. & C. R. R. Co.* v. *Cook,*
63 Miss. 38, which was a suit by the mother, as sole
surviving parent, for the loss of services of her minor
son, killed by the negligence of the railroad company.
The court, by ARNOLD, J., said:

"Death did not result instantly from the injuries receiv-
ed by the deceased. As surviving parent, the mother was
entitled to the services of her child, and, without refer-
ence to the statute she might sue for and recover at
least the value of his services from the date  of  the inju-
ries received by him to his death, and any incidental
expenses she may have incurred for medical attention,

care, and nursing up to that time. She would have a remedy at common law, not for the death of the child, or for the injuries suffered by him, but for the loss of his services and incidental expenses, as above specified."

The Cook Case was reviewed by our court in *Amos* v. *Mobile & Ohio R. R. Co.,* 63 Miss. 509, and there differentiated from the Amos Case, the court repeating, however, that:

"It was held [in the Cook Case] that when the death of a minor child from injury inflicted by another was not instantaneous, the mother, without reference to the statute might sue at common law for damages occasioned by the loss of the services of the child and for incidental expenses incurred by her from the date of the injury which produced death to the time when the child died."

Later in 1884 the case of *Meyer* v. *King,* 72 Miss. 1, 16 So. 245, 35 L. R. A. 474, presented a suit by the appellant for loss of services of his minor son "resulting from his death by reason of the negligence, as alleged, of appellee, a druggist in the city of Vicksburg, in selling to said minor, in willful violation of section 1252, Code of 1892, chloroform, which, after such sale, he drank and died." It was held that the contributory negligence of the minor barred a recovery under the first count of the declaration, and that:

"The death cannot here be concatenated with the sale, as cause with effect, but is due to the new will of the minor intervening, and operating as an independent cause to produce it."

Conceding that the wrongful employment in the present case was an actionable wrong, the measure of damages under the common law could be no greater than would be the measure of damages if appellee were guilty of the wrongful or negligent killing of the boy. In other words, without our statute, recovery would be limited to services lost during the minority and

prior to the death of the child. Authorities on this point are abundantly collated in the notes to *Gulf, C. & S. F. Ry. Co.* v. *Beall*, 41 L. R. A. 807. The editor's note is upon the "common-law right of action for loss of services of child killed." The true rule is there stated in the notes as follows:

"While the Georgia rule, as shown by the Georgia cases set forth *supra,* would seem to be firmly fixed and well settled, it would appear that outside of that state the rule that there is no common-law right of action by a parent for loss of services of his child killed by the wrongful act of another must be regarded as the true doctrine."

The Texas court in the Beall Case quotes Pigott, B, in *Osborn* v. *Gillett* (1873), L. R. 8 Exch. 88:

"It may seem a shadowy distinction to hold that when the service is simply interrupted by accident resulting from negligence the master may recover damages, while in the case of its being determined altogether by the servant's death from the same cause no action can be sustained. Still I am of opinion that the law has been so understood up to the present time, and, if it is to be changed, it rests with the legislature, and not with the courts, to make the change."

The conclusion reached by the court in that case is stated in the headnote as follows:

"The loss of services of a minor child killed by the fault of another does not give the parents any common-law right of action against the party in fault."

It is intimated by counsel that the case of *Wallace et al.* v. *Seales and Wife,* 36 Miss. 53, justifies a recovery here. That case, however, was a suit to recover the value of a slave hired for one purpose and improperly used for another. That case can have no bearing on the issues now presented. At the time that action was instituted a slave was property. Surely the deceased in the present litigation is not to be classed as property.

Is chapter 214, Laws of 1914, in aid of recovery here sought? This chapter simply re-enacts or brings forward in amended form section 721, Code of 1906, the only statute giving the right of recovery for injuries producing death. The essential nature of the recovery under the statute in its present amended form is the same under the Code of 1906. The true test of any right to recover under the statute is whether the .deceased could have maintained an action had death not resulted. *Railroad Co.* v. *Pendergrass,* 69 Miss. 425, 12 So. 954; *Meyer* v. *King, supra; White* v. *Railroad Co.,* 72 Miss. 12, 16 So. 248; *Harris* v. *I. C. R. R. Co.,* 111 Miss. 623, 71 So. 878; *Foster* v. *Hicks,* 93 Miss. 219, 46 So. 533; *G. & S. I. R. R. Co.* v. *Bradley,* 110 Miss. 152, 69 So. 666. In *White* v. *Railroad Co., supra,* the court says:

"The single question here is, could the son, had he survived, have maintained an action? If so, then, under paragraph 663, Code of 1892, the appellant can." *Meyer* v. *King,* [72 Miss. 1, 16 So. 245, 35 L. R. A. 474].

In *Hamel* v. *Railway Co.,* 108 Miss. 172, 66 So. 426, 809, it is said that:

"The right in the decedent to maintain the action is made a condition precedent for that given by the statute to the next of kin."

This holding was expressly reaffirmed by our court in *Harris* v. *Railroad Co., supra,* holding that there can be no recovery where the deceased, while living, recovered final judgment for the injuries inflicted. When counsel, therefore, concede that there was no negligent felling of the tree, they place themselves out of court. The foundation of the right given by the statute is the "real, wrongful, or negligent act or omission, of the parties sued," or the use by the defendant "of unsafe machinery, way, or appliances as would, if death had not ensued, have entitled the party injured or damaged thereby to maintain an action." The statute by express terms fixes the negligence or wrong of the defendant as the

basis for any recovery, and expressly limits the right of action to that kind of case which would entitle the injured party himself to sue for if living. Robert Lee Kirkpatrick, if living, would have no action at all against appellee. How, then, can it be said that his mother or next of kin may sue under the statute? It is plain that they cannot. That sentence in the amended act declaring, ''This section shall apply to all personal injuries of servants and employees received in the service or business of the master or employer, where such injuries result in death,'' does not change the essential nature or object of the statute. This provision of the statute appeared in the Code section, and the purpose of the amendment by the Laws of 1914 was to enable the personal representatives of the deceased person to bring the action the same as the persons already authorized by statute to sue, even though the death be instantaneous. It is stated in Standard Encyclopedia of Procedure, vol. 6, p. 371, that:

''Notwithstanding the action is a new cause of action, under the statutes modeled after Lord Campbell's Act, it is generally provided by statute, or it is held by construction, that the action for wrongful death is only maintainable where the circumstances are such as would have entitled the deceased to recover for his injuries had he survived.''

So it is that the rights of the mother must here be inquired into and measured just as if the statute did not exist. This fact appears to differentiate the case of *Williams* v. *Railroad Co.,* 91 Ala. 635, 9 So. 77, so much relied upon by appellants. It appears that the Alabama statute is there in aid of the recovery.

The authorities on the main points are too numerous to discuss or even to collate in a brief opinion. A few in addition to those discussed above and pertinent to the issue are as follows: *Trow* v. *Thomas,* 70 Vt. 580, 41 Atl. 652; *Sherman* v. *Johnson,* 58 Vt. 40, 2 Atl. 707;

*Mayhew* v. *Burns*, 103 Ind. 328, 2 N. E. 793; *Thomas* v. *Union Pacific*, 1 Utah, 232; *Eureka* v. *Merrifield*, 53 Kan. 794, 37 Pac. 113; *I. C. R. R. Co.* v. *Slater*, 129 Ill. 91, 21 N. E. 575, 6 L. R. A. 418, 16 Am. St. Rep. 242; Cooley on Torts, (Student's Ed.), sec. 142, p. 271; Cyc. vol. 29, p. 1641.

*Affirmed.*

Holden and Ethridge, JJ., dissent.

Ethridge, J. (dissenting). I am unable to agree with the conclusions of the majority in this case. The right of the mother, being the sole surviving parent in this case, to recover for the services of the child during minority is entirely distinct from the right of the child itself, in case it had not been killed and had brought the suit, and for the mother, brothers and sisters, as next of kin, to bring such a suit as next of kin. In case of the mother suing for loss of services, the action springs from the tort of the company in hiring the minor son of the appellant without her consent; and there is a direct causal connection between such wrongful hiring and the death of the son. In so far as the suit could be brought by the next of kin for the wrongful death, such suit would depend upon different principles and entirely separate rights, and be governed, of course, by different principles. It is also true that there is a separate right in the parent and in the child, to sue for injuries occurring, that are entirely independent of each other. It was held in *Westbrook* v. *Mobile, etc., R. Co.*, 66 Miss. 560, 6 So. 321, 14 Am. St. Rep. 587, that infants have legal rights distinct from their parents to security from personal injuries caused by the negligence or willful wrong of others; and the negligence of the parent is no excuse for the abuse or misuse of the child by another. In that case it was held that the contributory negligence of the parent could not be imputed to the child, where the suit was brought by or on behalf of the child, and

that its rights are separate and distinct from the rights of the parents, as parents, to recover on the same injury. Of course, the converse of this proposition would be true, and the parent's rights would not be affected by what might defeat the son's rights; and it is not true as held in the majority opinion, that the parent's rights depend upon the right of the child to have sued, had he lived, for the injuries. In 26 Cyc., p. 1583, under the heading "Damages," it is stated:

"The measure of damages for enticing away the servant of another, who is hired for a definite time, is the actual loss sustained by the master. If an entire loss of service during the balance of the term of employment is shown, the value of the services for all of such time is recoverable. In a proper case exemplary damages may be awarded."

At page 1582 of the same volume, under the heading, "Actions," it is said:

"An action for enticing away a servant is for a tort, and not for a breach of an implied contract. The common-law remedy by an action on the case is available, notwithstanding the existence of a remedy by an action for the penalty, as provided for by statute, where it is merely cumulative. The right to sue may be lost by failure to notify the third person of the prior contract of hire, or by a failure to comply with conditions precedent in the statute. If the complaint is for harboring or entertaining a servant, evidence of enticement is not necessary. Employment is prima facie evidence of enticement, inasmuch as it will be presumed, where one knowingly hires the servant of another, that the servant was enticed away. The general rules as to pleading, admissibility of evidence, and instructions to the jury applicable to civil actions in general govern an action for enticing away."

In 29 Cyc., p. 1642, subject, "Parent and Child," par. 10, it is stated:

"Separate Causes of Action of Parent and Child. An injury to a child gives rise to two causes of action, one on behalf of the parent, the other on behalf of the child; and the two causes of action cannot be joined. It follows that a recovery by the parent for the injury and loss which he has suffered does not bar a recovery by the child for the injury personal to himself; and conversely, a recovery by the parent on behalf of the child for the injury personal to the latter does not bar a recovery by the parent for his own loss and damages resulting from the injury. Neither is the commencement of an action by an infant by his father as next friend for personal services a waiver of the father's right to recovery for loss of services of the infant."

On page 1643, Id., is the following:

"If the child is injured in the course of a dangerous service the employer is liable; but the mere fact that a child was injured while in the employ of a person by whom he has been employed without the knowledge of the parent does not render the employer liable in an action by the parent for the loss of the services of the child, where the employment was not hazardous and the injury was not due to the employer's negligence. A parent cannot, of course, recover against one who was not, in person or by his agent, the proximate cause of the injury."

In the case of *Hendrickson* v. *Louisville, etc., R. Co.,* 137 Ky. 562, 126 S. W. 117, 30 L. R. A. (N. S.) 311, the Kentucky court of appeals held that the father may recover damages for injury to his minor son because of his employment without his knowledge as brakeman by a railroad company which knows of his minority, and the fact that the son assumes the risk of his employment, so that he could not recover for his own injury, is immaterial. This is an ably reasoned case, and we quote from the opinion the following:

"But in *Louisville & N. R. Co.* v. *Willis,* 83 Ky. 57, 4 Am. St. Rep. 124, which was a suit by the father to

recover for the wrongful interference with his infant son, a recovery was allowed. The court stating the basis of the ruling said: 'The conductor knew from his appearance that he was under age, and he received and used him. This was an exercise of dominion and illegal control over him, by the general agent of the appellant, at war with the father's rights. The appellant cannot shelter under the claim that it did not know that the appellee objected to the son rendering the service, since it was its duty to know that the appellee was willing to do it before it took control of him. The duty of the father to educate and maintain the son entitled the former to the son's services, and placed him in the attitude of a master to him, or created the relation of master and servant; and any interference with the master's right to control the servant by another renders the latter liable at least for any injury that was likely to result from such illegal conduct.' It is true that in that case there was only one brakeman on the train, but the opinion was not rested on this fact in any way. It was rested on the broader ground that there had been a wrongful interference with the father's rights. The same rule was applied in *Newport News & M. Valley Co.* v. *Carroll,* 17 Ky. Law Rep. 374, 31 S. W. 132. These decisions follow the common-law rule, which has long been recognized. See 29 Cyc. Law & Proc. pp. 1637, 1638, and cases cited. The conductor is the managing agent in charge of the train. While thus in charge of the train and having authority to control it, his act in taking and using the plaintiff's son upon the train, as between the plaintiff and the railway company, was the act of the railway company. The service of brakeman is peculiarly hazardous. The knowledge on the part of the conductor that the son was on the train and rendering service as brakeman was the knowledge of the defendant. The defendant could not, with knowledge of the father's rights thus expose the son knowingly to the dangers of such a

hazardous business without his consent.  While the son took the risk of the work in which he voluntarily engaged, the father, who did not consent to it, was not affected by this.''

In the present case the employment was very hazardous, and the quotation from the above case is peculiarly applicable.  In the same opinion, further on, the court uses the following language:

''The plaintiff need not show that the conductor knew that he objected to his son rendering the service.  It is sufficient if it was done without the plaintiff's consent. He must show that the conductor knew the son was under twenty-one years of age.  But this he may show by circumstantial evidence or by direct evidence, as knowledge of a fact may ordinarily be shown by proof of facts sufficient to put a man of ordinary prudence on notice of it.''

In the L. R. A. note to this case it is stated:

''It is a general rule that an employer, putting a minor servant, without his parent's consent, to do work by which the child is injured, commits an actionable wrong, which will authorize the parent to recover for whatever loss of services may result from the injury. In such a case the employer is liable although there was no negligence upon his part.  *Marbury Lumber Co.* v. *Westbrook,* 121 Ala. 179, 25 So. 914; *Woodward Iron Co.* v. *Curl,* 153 Ala. 205, 44 So. 974; *Braswell* v. *Garfield Cotton Oil Mill Co.,* 7 Ga. App. 167, 66 S. E. 539;'' and numerous other cases.

It is further stated: ''So the doctrine of assumption of risk will not prevent a recovery (citing authorities). Nor is the minor servant's contributory negligence a defense to such an action (citing authorities).  And the fellow-servant doctrine is not applicable (citing authorities).''

There are numerous authorities cited in this case note, and I think that the case and the authorities cited are peculiarly applicable to the facts of the case at bar.

In the case of *Haynie* v. *North Carolina Electric Power Co.*, 157 N. C. 503, 73 S. E. 198, 37 L. R. A. (N. S.) 580, Ann. Cas. 1913C, 232, it was held in that case, where, in an action for the death of a boy in the employment of the defendant the plaintiff based his claim upon a violation by the defendant of the contract of hiring by which the injury occurred, that the burden was on the plaintiff to show the breach of contract, and that it was the proximate cause of the child's death; and that a father who hires his son out may stipulate as to the kind of work his child may be employed in, unless prohibited by statute, and the consent of the parent that the child may be employed at one kind of labor is not a consent that he be placed in another and more dangerous work; as, where a person hired an infant as water carrier under an agreement with his father that he should be kept on a certain side of a river, and not allowed to go near the engines and machinery situated on the opposite side, he was bound to use due diligence to keep the child away from the machinery and at the work he was hired to perform, or to return him to his father, and a showing of his presence near the machinery with the knowledge of the defendant shows a violation of a duty to him which will support an action for his death. And in an action for the death of an infant, a showing of a failure of his employer to keep him away from dangerous machinery, as required by the contract of hiring, with knowledge of his habit of playing there, will permit the jury to infer that if the agreement had been carried out his death would not have been caused by such machinery, and is a sufficient showing of proximate cause to support a finding for the plaintiff. It was also held that, in such action, the contributory negligence of the child cannot be availed of as a defense.

In this state, I think the liability, so far as principle is concerned, is settled in the case of *Wallace* v. *Seales*, 36 Miss. 53. The majority opinion says that this case

has no bearing on the issues here presented: ''that at the time that action was instituted a slave was property. Surely the deceased in the present litigation is not to be classed as property.'' I am unable to appreciate the distinction with which the majority sweep aside so lightly the announcement of this case. While a slave was a chattel, he was valuable only for the service which he performed; his value consisted entirely in his ability to perform service. A service performed by a child to its parents is no less valuable, and is no less a property right than the service of a slave, and the only distinction is that a slave could be sold, while a child may not be sold, but his services may be sold for a definite length of time and for a fixed consideration. In the case mentioned the ground depended upon for a recovery was that the hirer of the slave had improperly used and exposed them to a disease, because of which the slaves sickened and died. The court held that if the hirer of the slaves improperly used them, and that by reason of such improper use the slaves sickened and died, there was a right of recovery. Of course, this case is not a ''grey-mule case'' with the present one, but the principles underlying it are the same. It certainly seems to me that the law did not contemplate that a recovery could be had for the death flowing from a misuse of the servant and slave, and that the same right of action would not lie for the misuse and consequent death of a child. The foundation of the parents' right, as generally stated in the books, is founded upon the service of the child. I think the authorities relied upon in the majority opinion result from misconception of the principles underlying the right of the mother to recover for services by wrongful hiring. Our court, in cases where the personal representatives of the deceased are denied recovery where death is instantaneous, recognizes the distinction of the right of other persons than the deceased to recover for the injury resulting from the death.

The case usually relied upon to support the principle that no recovery can be had where death is instantaneous is *Railroad Co.* v. *Pendergrass*, 69 Miss. 425, 12 So. 954; and certainly this case is as strong as any case that can be found in the Mississippi reports for the principle announced by the majority in this case. But in that case, Justice WOODS, in delivering the opinion of the court, expressly recognized the distinction, for, on page 431 of 69 Miss., page 955 of 12 So., we find the following:

"We are of the opinion that the personal representative has no right of personal action where the deceased never had such right, and that, where death was simultaneous with injury, it is impossible, to the healthy mind, to even conceive of a right of action in the man instantaneously killed. In such case, all recoverable damages must be sought by the kindred who have sustained loss, and the mere personal representative can have no standing in court."

At the time this decision was rendered we had no statute such as we now have, providing that all rights may be enforced in one suit, and that only one suit can be brought. When the facts of each case cited in the majority opinion are properly understood, and the principles of law applicable to the facts are applied, they do not conflict with my views of the present case. Our court has recognized that at common law an action lay for the wrongful hiring of a servant. In *Hoole* v. *Dorroh*, 75 Miss. 257, 22 So. 829, it is stated:

"At common law, if any person hired or retained the servant of another, and the servant was thereby caused to leave his master, the latter had an action for damages against both the hirer or retainer and the servant."

At page 264, of 75 Miss., page 830 of 22 So., Judge TERRAL quotes from 1 Blackstone, p. 429, as follows:

"If any person do hire or retain my servant, being in my service, for which the servant departeth from me and goeth to serve the other, I may have an action for

damages against both the new master and the servant or either of them.. The reason and foundation upon which all this doctrine is built seem to be the property that every man has in the service of his domestics, acquired by the contract of hiring and purchased by giving them wages."

In *Sowell.* v. *McDonald*, 58 Miss. 251, this court held, in a case where an infant five years of age committed a violent and brutal assault and battery upon a child eighteen months of age, and the father of the latter caught the former and whipped him severely, and suit was brought by the next friend of the boy so thrashed to recover damages for the assault and battery, or whipping, that the father could recover from the person beating his child damages for the loss of services occasioned by such beating, and that a verdict for one hundred dollars would not be set aside; that although the provocation which occasioned the whipping was great, it would not justify a person in inflicting such punishment.

It seems to me there could be no question whatever of the right of the mother to recover for the services from the date of the hiring to the defendant to the date of the majority of the child killed in this case. The death of the boy was occasioned by his employment and there was a proper causal connection between the tort of wrongfully hiring the boy and the injury inflicted upon him which caused his death. I do. not contend that the employer would be liable for every death that may befall a minor in his employ, because, under the authorities there must be a causal connection between the tort of the defendant and the death of the child. The boy was killed in this case while engaged in the service of the company, and was at all times while so employed by them within a danger zone. It was not only a tort in the present case to employ the boy without the mother's consent, but it is made a crime, and forbidden by

section 1080, Code 1906, section 807, Hemingway's Code, which is as follows:

"Any person who shall persuade, entice, or decoy away from its father or mother, with whom it resides, any child under the age of twenty-one years, if a male, or eighteen if a female, being unmarried, for the purpose of employing such child without the consent of its parents, or one of them, shall upon conviction, be punished by a fine of not more than twenty dollars, or imprisoned in the county jail not more than thirty days, or both."

It is well settled in the authorities that, where the legislature prohibits the doing of a thing, and a person violates the statute, that a right of action arises in favor of any one injured by such violation. *Sluder* v. *St. Louis Transit Co.,* 189 Mo. 107, 88 S. W. 648, 5 L. R. A. (N. S.) 186, and authorities cited therein; *Wolf* v. *Smith,* 149 Ala. 457, 42 So. 824, 9 L. R. A. (N S.) 338, case-note and authorities cited therein. See, also, *Haynie* v. *North Carolina Electric Power Co.,* Ann. Cas. 1913C, 232, above quoted, and authorities in the case-note appended thereto. It is stated in the case-note by the learned editors of this series:

"It is the general rule that an employer who employs an infant without his parent's consent, and requires him to do dangerous work in the performance of which the child is injured, commits an actionable wrong, for which the employer is liable, although there is no evidence of negligence on the part of the employer"—(citing authorities).

" 'One who employs a minor child without the consent of his father, and without such consent places him to work at a dangerous place or upon a dangerous work, is liable to the father for any injury suffered by the minor as the result of being placed at such work ' " (citing authorities).

This note is a valuable demonstration of the position for which I contend in this case.

Again, it is settled in the authorities that, where a person employs a minor in violation of law, without the consent of the parent, it is negligence *per se,* and may be sufficient to justify a jury in finding negligence in the injury.

In *Rolin* v. *R. J. Reynolds Tobacco Co.,* 141 N. C. 300, 53 S. E. 891, 7 L. R. A. (N. S.) 335, 8 Ann. Cas. 638, it is held that the employment of a child in a factory contrary to the provisions of a statute prohibiting the employment in factories of children under a specified age is very strong evidence of negligence. It was further held that if the owner of a factory is negligent in employing a child contrary to the prohibition of a statute prohibiting the employment in factories of children under a prescribed age, he cannot escape liability for injuries sustained by the child so employed because the accident was caused by the negligent act of a fellow servant, and that, while the negligence of the fellow servant may be the immediate intervening cause, the unlawful employment, continuing, is, in combination with the intervening act, a proximate cause of the injury. In the case-note to this case it is stated:

"There seems to be an apparent and rather equally balanced conflict in the authorities, not as to whether the act of employing a minor in violation of a prohibitory statute is evidence of negligence, but as to the weight of such evidence. The courts are uniformly agreed that the commission of such an offense is evidence of negligence. And the courts that refuse to go further than this state that the employment in violation of the statute is one fact to be considered in the establishment of the defendant's negligence, and that it 'is very strong, if no conclusive, evidence of negligence.'"

See, also, the authorities cited and referred to in this note.

In the case of *Stehle et al.* v. *Jaeger Automatic Machine Co.,* 220 Pa. 617, 69 Atl. 1116, 14 Ann. Cas. 122, it was held that, under a Pennsylvania statute fixing the

age limit below which children shall not be employed in certain kinds of work, one employing a child under the statutory age in a prohibited occupation does so at his own risk, and in an action against the master for personal injuries sustained by a child in such employment, the defendant cannot set up as a defense either assumption of risk or contributory negligence; that the fact that a statute forbidding the employment of children below a certain age in dangerous occupations is penal, and makes provision for the punishment of its violation by fine or imprisonment, does not supersede a right of action for damages in a civil proceeding; and that the fact that such child was employed constituted evidence of negligence which, if found to have been the cause of an injury to such minor, authorized a recovery against the employer. This case, as reported in the Annotated Cases, has a case-note at page 123, containing many decisions upon the subject. From this note I quote the following, by the Indiana court:

" 'A causal connection between the unlawful employment and the injury of which complaint is made must be shown. If the child should die of some organic disease, or be injured by a stroke of lightning or other intervening act beyond the master's control and not reasonably to be foreseen and anticipated, the master could not be held liable. The state has said in positive terms that employers must not take children under fourteen years of age into the service of their factories and subject them to the danger of being mangled or killed by machines propelled by the powerful agencies of steam or electricity. This mandate, it is alleged, appellant disobeyed, and appellee was injured in the mill, and by the agencies against which the law sought to protect him. The connection between the unlawful employment and the injury in this case is as direct as cause and effect, and brings appellant within the operation of the statute.' "  *Inland Steel Co.* v. *Yedinak,* 172 Ind. 423, 87 N. E. 229, 139 Am. St. Rep. 389.

In the same case-note is a quotation from *Starnes* v. *Albion Mfg. Co.*, 147 N. C. 556, 61 S. E. 525, 17 L. R. A. (N. S.) 602, 15 Ann. Cas. 470, wherein the court said:

" 'We do not mean to hold that the employer violating the act would be liable in damages for every fatality that might befall the child while in its factory. For instance, had the plaintiff died of heart disease, or from a stroke of paralysis, or been seriously injured by the willful and malicious act of a workman in knocking him against a machine, or injured from some cause wholly disconnected from the unlawful employment, the defendant could not be held liable in damages simply on account of the employment in violation of the statute. But we do hold that the employment, when willfully and knowingly done, is a violation of the statute, and that every injury that reasonably and naturally results is actionable. In this case the connection between the employment and the injury is that of cause and effect, and brings the defendant within the operation of the statute. It had no right to employ the boy. While in its employment and on its premises, in tampering, through childish carelessness incident to his years, with dangerous machinery, he was injured. Had he not been employed he would in all probability not have been on its premises, and not exposed to the temptation to meddle with dangerous instruments.' "

In the case of *Berdos* v. *Tremont & Suffolk Mills,* 209 Mass. 489, 95 N. E. 876, Ann. Cas. 1912B, 797, the court held that under a statute forbidding the employment of children under a certain age in any factory, etc., and imposing a penalty for any violation thereof, the penalty is not the only consequence of violating the statute, but a child who is injured thereby has a right of action against the wrongdoer, provided he shows that a condition to which the statute directly relates has a causal connection with his injury. It was also held in this case that the violation of a criminal statute is evidence of negligence on the part of the violator as to

all consequences that the statute was intended to prevent; and therefore, in an action by a child for injuries received while employed in violation of a statute regulating child labor, the negligence of the defendant employer is a question for the jury. In the Ann. Cas. report of this case there is a case-note at page 803, citing numerous authorities in support of the contentions of the appellant in the present case. I quote from page 807 of the Ann. Cas. note, as follows:

"It has been held that if the child is injured in the course of his employment, the unlawful employment is the proximate cause" (citing authorities).

The editor quotes from *Casteel* v. *Pittsburg Vitrified Paving, etc., Brick Co.,* 83 Kan. 533, 112 Pac. 145, wherein the court said:

"The contention is also made that there was no evidence that the violation of the statute was the proximate cause of the plaintiff's injury. The jury were justified in finding, and must be deemed to have found, that the defendant unlawfully employed the plaintiff at an occupation that placed him in peril; that he was injured in the course of his employment in consequence of that peril; that what happened was one of the very things the statute was intended to prevent. Such findings established the necessary causal relation between the disobedience of the statute and the plaintiff's injury."

And again quoting from the note:

"The fact that at the time of his injury the child was acting outside of the scope of his employment has been held not necessarily to release the master from liability. *Frank Unnewehr Co.* v. *Standard L., etc., Ins. Co.,* 176 Fed. 16, 99 C. C. A. 490. In *Stehle* v. *Jaeger Automatic Mach. Co.,* 225 Pa. 348, 74 Atl. 215, 133 Am. St. Rep. 884, where the child was injured in attempting to do something which was no part of his duty, and which he had been expressly warned not to do, the court said:

'The effort on part of the defense was to show that, not only cleaning the pipe through this hole was no part of

plaintiff's duty, but that he had been specially warned
not to attempt it, and much evidence was offered and
admitted on this branch of the case. Let it be that these
were the established and admitted facts. That they
would be conclusive against an adult's right of recovery
is unquestioned; but we are not dealing here with the
case of an adult. The plaintiff is within a class of per-
sons whom the law seeks to protect in the matter of their
employment, because as a rule they are not able to ade-
quately protect themselves. There can be no doubt
that one of the chief purposes of the law in forbidding
their employment in industrial establishments was to
prevent their exposure to the danger of personal injury
from the machinery used therein. If the danger in
their case were only such as the adult is exposed to,
there would be little justification for the law. It contem-
plates a special danger to persons of this class in connec-
tion with such employment, because of the characteristics
incident to the immaturity of youth—imprudence, lack
of judgment, heedless curiosity, and playfulness—and
so it makes their employment unlawful. When a child
has been employed in violation of law and is injured in
the place where he is employed, to allow the employer
to escape liability because the injury resulted from the
imprudence or negligence of the child would be to de-
feat the purpose of the law and render it absolutely
futile.' "

In the case of *Norman v. Virginia-Pocahontas Coal Co.,*
68 W. Va. 405, 69 S. E. 857, 31 L. R. A. (N. S.) 504,
it is held by the supreme court of West Virginia that,
a violation of the statute inhibiting the employment of
boys under fourteen years of age in coal mines consti-
tutes actionable negligence whenever that violation is
the natural and proximate cause of an injury; that the
violation of the statute is rightly considered the proxi-
mate cause of any injury which is a natural, probable,
and anticipated consequence of the nonobservance;

that it was not all injuries that the master is chargeable with, but those that result during the unlawful employment against which the statute was intended to guard; that if the employment is unlawful, the servant cannot be held to have assumed the risks incident hereto, including the risk of injury by fellow servants. See, also, the case-note to *Rolin* v. *R. J. Reynolds Tobacco Co.*, as contained in the 7 L. R. A. (N. S.) 335.

It is true these statutes in many cases differ in terms from the statute in this state, but the trend of all the decisions is that if the injury or death resulted from employment and causes which the statute intended to prohibit or guard against, the right of the parent to recover exists. What is the purpose of a statute prohibiting people from enticing minors away from their parents, and what protection is intended to be afforded the parties by this statute? Manifestly and evidently the purpose of the statute is to preserve to the parent the right to have the control, custody, and services of his minor children during the period of their minority. In the case at bar, by reason of the wrong of appellee, the mother's right to the services and custody of her child was taken from her; and while he was so engaged in the service of the defendant thus unlawfully procured, his death resulted—from the wrongful hiring by the company. It is a manifest injustice that the parents can thus be deprived of the services and society of their children and no remedy be afforded them, because the deceased himself could not have recovered had he been living.

Again, I am unable to concur with the majority on the construction of the statute involved in this case. The statute involved is chapter 214, Laws 1914; section 501, Hemingway's Code. The language of the statute in the beginning is that:

"Whenever the death of any person shall be caused by any real wrongful or negligent act, or omission," etc.

Was the death of this boy caused by any real wrongful act of the defendant? In other words, was the defendant guilty of any wrong that operated as a cause resulting in the death of the boy? If it be not a real wrong to employ a minor, without the consent of his parent, and put such minor in a dangerous occupation near and around where trees are being felled—not by one or a few men, but by a large crew of men—then my ideas of right and wrong are not very clear. It is not only a negligent act or negligent omission of the defendant that makes it liable, but it is "any real wrongful act" of the defendant having a causal connection with the injury that gives to the next of kin and relatives the right to bring the suit, regardless of the fact that death is instantaneous. On this point the opinion of the majority is too restrictive. They construe the statute with the strictness of a criminal statute, whereas it is in its very purpose and nature a remedial statute, and should receive a liberal construction for the purpose of effectuating the object of the legislature. It is difficult for me to see how there could be any distinction under this statute in cases where death was instantaneous and where it was not instantaneous. No one disputes the fact that the mother could have recovered for the loss of services occasioned by the injury if the son had been crippled and disabled instead of being killed outright. The purpose of the statute was to give the right of action in all cases where death ensued where there would be an action for the wrong or negligence or omission if death had not resulted immediately. Again, it is provided in this section that:

"This section shall apply to all personal injuries of servants and employees received in the service or business of the master or employer, where such injuries result in death."

This clause makes it clear that the injury inflicted on servants or employees, where death is instantaneous, shall be actionable, and all persons having any right in

the life or services of the servant or employee should have that right perpetuated after the death of the employee. I think it is exceedingly unfortunate that we give so narrow and restricted an interpretation to the statute in this case. I can see no reason to infer from the statute that it intended to reserve any claims or rights that might be infringed by the wrongful killing of a person. I think the authorities will show that nearly all the states having similar statutes have given them a broader interpretation than the majority has placed on this one. The case of *Williams* v. *Railway Co.*, 91 Ala. 635, 9 So. 77, referred to in the briefs, gives such construction to the Alabama statute, which is less comprehensive and broad in its terms than our own statute. While Alabama held to the doctrine, in the absence of statute, that a right of action under the common law did not exist where death was instantaneous, yet when the legislature passed a statute designed to save the right of action after death, the court in the above case and in subsequent cases gave a liberal interpretation to the act, and held that it applied in cases substantially like this, where death was instantaneous. I could cite numerous authorities from several states on interpretation of the statute; but as these decisions, construing statutes of other states, would have but little influence with an appellate court in construing its own statute, I will refrain from protracting this opinion with the citations and quotations from such cases. The majority opinion seizes upon an admission of counsel made in this case as settling the law on certain principles of the litigation. While I would be reluctant to hold that an admission of counsel, in reference to facts, would not bind his client and the court, yet I do not think that it is fair to bind counsel by admissions on one branch of the case where you reject his views on the other branches of the case. In my own opinion, I think the statute prohibiting the employment of minors will be evidence of negligence, and would

distinguish the case of minors from the case of adults where they were killed without other negligence than that of employing them and putting them in a dangerous occupation. I think there are circumstances in the record, independent of the statute prohibiting employment, from which negligence could be inferred by a jury. The felling of the tree in question, which caused the death of the appellant's son, seems to have been done without regard to the known laws of nature and what experience ought to show any experienced timber cutter, in other words, the direction in which the tree was designed to fall had other trees so situated as to naturally cause the tree, in falling, to switch around in the manner it did; and this could certainly have been foreseen by a prudent manager. There is also evidence in the record that the foreman's direction to the boy, as claimed by him, was not heard by others standing at the place and in a position to hear it had he said what he claims to have said, and this presented a conflict for the jury's decision. There was also evidence that the deceased and those with whom he worked were habitually permitted—even directed—to assist in cutting trees when they were up with their own work. It is true this evidence is not as strong and clear as it might be, but, taking all the circumstances together, I see no reason why the case should not have gone to the jury, as to the rights of all parties, and this is especially true as to the right of the mother for the services of her son during the period of his minority.